[No. 15116-6-III.   Division Three.   April 22, 1997.]

BRENDA L. WILSON, *Appellant*, v. OLIVETTI NORTH AMERICA, INC., *Respondent.*

*Fred O. Montoya,* for appellant.

*C. Matthew Andersen, Thomas M. McBride,* and *Winston & Cashatt,* for respondent.

THOMPSON, J. — Brenda L. Wilson appeals a judgment

in favor of her former employer, Olivetti North America, Inc., in her action involving claims for sexual harassment and constructive discharge. We agree the trial court improperly denied her a jury trial and reverse.

Ms. Wilson was a "rework specialist" in Olivetti's National Repair Center. On May 19, 1993, co-worker Bart Deiss commented to Ms. Wilson: "Brenda, does your husband know that you leave home dressed like that? No wonder women in society today get raped." Turning to another employee, Mr. Deiss asked: "Bob, would you let your wife leave home like that?" Ms. Wilson became upset and obtained permission to leave work early.

Other employees reported Mr. Deiss's comments, which eventually came to the attention of Stanley Dahlin, Olivetti's employee relations manager. Mr. Dahlin spoke with several of the employees and prepared a memo detailing the incident. Mr. Dahlin then instructed Mr. Deiss's supervisor, Mark Haskins, to give Mr. Deiss a written warning and to inform him a reoccurrence would result in further discipline, possibly including termination.

Mr. Haskins filled out an "Employee Warning Report" form, listing the type of violation as "Sexual Harrassment [sic]" and stating "The one comment was made, followed by — 'I guess that's not my place to say' — also, no intentional malice was in mind." The report was placed in Mr. Deiss's personnel file, with Mr. Dahlin's report of the incident attached. Mr. Haskins testified he orally told Mr. Deiss he could be fired if he repeated the behavior and he should "stay away from Brenda Wilson." Mr. Deiss recalled Mr. Haskins telling him: "This is a written warning. If anything happens like this again, you could lose your job."

Ms. Wilson testified that after the incident she suffered stress that caused hives, headaches, and nausea. She said she told Mark Skidmore, her department specialist, about the problems. Ms. Wilson also noticed co-workers began treating her coldly and refused to respond to her greet-

ings. Mr. Skidmore testified Ms. Wilson informed him about the cold treatment, but he told her it was "something . . . I couldn't affect." Mr. Skidmore did not relay Ms. Wilson's complaints to his supervisor.

About two weeks after the incident with Mr. Deiss, Ms. Wilson was asked to work temporarily in Mr. Deiss's area. She objected that it was too soon after the incident and that she would be uncomfortable, but reluctantly agreed. When she asked Mr. Deiss for help with an unfamiliar procedure, she testified, Mr. Deiss gave her only minimal help and tossed an instruction pamphlet at her. Ms. Wilson testified that she complained again to Joe Murphy, her department supervisor, but he told her, "I really need you to do it." Mr. Murphy testified he reassigned Ms. Wilson as soon as she told him she no longer could work near Mr. Deiss.

Ms. Wilson voluntarily quit her job on June 22, 1993, without giving Olivetti an explanation. She filed two complaints alleging (among other things) sexual harassment and constructive discharge in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) (1994), and of the Washington Law Against Discrimination, RCW 49.60. The captions of both complaints contained the words "DEMAND FOR JURY TRIAL." Ms. Wilson also filed a separate demand for a six-member jury and paid the required $50 fee, but she failed to *serve* the separate jury demand on Olivetti.

On June 14, 1994, the parties filed a joint status report indicating a 12-person jury would be demanded. On June 22, 1995, four days before the trial began, Olivetti moved to strike Ms. Wilson's demand for a jury trial. Olivetti's attorney argued it had not had previous notice that a jury trial was demanded, and the prejudice to Olivetti was "somewhat obvious." The court granted the motion, and the case was tried to the bench. After the trial, the court rejected both the constructive discharge and sexual harassment claims and denied Olivetti's request for attorney fees.

■ The dispositive issue is whether the trial court improperly struck Ms. Wilson's demand for a jury trial. In Washington, the right to a trial by jury is "inviolate" and may not be impaired by either legislative or judicial action. CONST. art. I, § 21; *Geschwind v. Flanagan*, 121 Wn.2d 833, 839-40, 854 P.2d 1061 (1993); *see Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 771 P.2d 711, 780 P.2d 260 (1989). CR 38(a) preserves this constitutional right, and the rule further provides in pertinent part:

> (b) **Demand for Jury.** At or prior to the time the case is called to be set for trial, any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing, by filing the demand with the clerk, and by paying the jury fee required by law. If before the case is called to be set for trial no party serves or files a demand that the case be tried by a jury of twelve, it shall be tried by a jury of six members with the concurrence of five being required to reach a verdict.
>
> . . . .
>
> (d) **Waiver of Jury.** The failure of a party to serve a demand as required by this rule, to file it as required by this rule, and to pay the jury fee required by law in accordance with this rule, constitutes a waiver by him of trial by jury.

Spokane County Superior Court LR 38(a)(1) requires that a demand for a jury trial "be contained on a separate document."

Even if a party fails to comply with the rules for demanding a jury trial, the court may in its discretion order a jury trial. CR 39(b); *see Balise v. Underwood*, 71 Wn.2d 331, 339-40, 428 P.2d 573 (1967); *Davis v. Falconer*, 159 Wash. 230, 232-34, 292 P. 424 (1930); *Mount Vernon Dodge, Inc. v. Seattle-First Nat'l Bank*, 18 Wn. App. 569, 581, 570 P.2d 702 (1977).

In this case, Ms. Wilson complied with CR 38(b) and submitted a separate jury demand as required by LR 38(a)(1). However, she failed to serve the separate demand on Olivetti, as the local rule apparently envisions. The

parties have not cited any Washington authorities, nor have we found any, that discuss whether a party's failure to comply with a local rule waives the constitutional right to a jury trial. In the federal system, a party's failure to comply with FED. R. CIV. P. 38 is a waiver of the right to a jury trial, "even though it was inadvertent and unintended and regardless of the explanation or excuse." 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2321, at 166 (2d ed. 1995) (footnote omitted); *see Biesenkamp v. Atlantic Richfield Co.*, 70 F.R.D. 365, 366 (E.D. Pa. 1976). However, the right to a jury trial in federal court is "fundamental," and courts have been instructed to "indulge every reasonable presumption against waiver." *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 57 S. Ct. 809, 812, 81 L. Ed. 1177 (1937).

In *Pradier v. Elespuru*, 641 F.2d 808 (9th Cir. 1981), the plaintiff complied with FED. R. CIV. P. 38(b), but failed to include the words "Demand for Jury Trial" in the caption of the complaint as required by a local rule. Concluding the local rule was inconsistent with Rule 38, the court held:

> The demand for a jury trial having been properly made under Fed. R. Civ. P. 38(b), the failure to fulfill an additional requirement of a local rule to place a notation to that effect in the title cannot constitute a waiver of a trial by jury. Because the right to a jury trial is a fundamental right guaranteed to our citizenry by the Constitution, courts should indulge every reasonable presumption against waiver.

*Id.* at 811 (citations omitted); *see Partee v. Buch*, 28 F.3d 636 (7th Cir. 1994); *but see Rutledge v. Electric Hose & Rubber Co.*, 511 F.2d 668, 674-75 (9th Cir. 1975).

In *Kahn v. Head*, 114 F.R.D. 20 (D. Md. 1987), the plaintiff included the words "Jury Trial Demanded" on the caption of every pleading, and the court's scheduling orders (to which the defendant did not object) indicated the case would be tried to a jury. However, the plaintiff apparently filed his motion for a jury trial too late, and the defendant contended the late filing was a waiver. The

district court disagreed, noting that both the defendant and the court had constructive and actual notice that the case would be tried to a jury. *Id.* at 21.

■ Washington courts similarly have held that substantial compliance may be sufficient to satisfy procedural notice requirements if the other party has actual notice or if the service was reasonably calculated to give notice to the other party. *In re Saltis*, 94 Wn.2d 889, 896, 621 P.2d 716 (1980).

■ In this case, the captions of Ms. Wilson's two complaints (which were served on Olivetti) stated that a jury trial was demanded. And the joint status report (which Olivetti's attorney signed) indicated a jury trial was being demanded. Olivetti certainly had actual notice that Ms. Wilson was demanding a jury trial. Moreover, Olivetti cannot reasonably contend it was prejudiced by Ms. Wilson's failure to serve the separate jury trial demand. Aware of the demand at least at the time of the joint status report more than a year before the trial, a simple inquiry of plaintiff's counsel would have clarified any confusion. Olivetti's insistence on strict compliance with the local rule, despite its actual knowledge of the jury trial demand, exalts form over substance. Ms. Wilson substantially complied with the procedural requirements, and Olivetti was not prejudiced significantly by the violation because it had actual knowledge of the jury trial demand. The trial court abused its discretion in refusing the jury trial.

We reverse the judgment and remand for a jury trial. As guidance for the court on remand, we also address the question whether it improperly excluded testimony offered by Ms. Wilson.

As evidence that Olivetti's response to the May 19 incident was ineffective, Ms. Wilson was asked to describe other incidents of harassment. She testified in an offer of proof:

Q [by Mr. Montoya] Mrs. Wilson, I discussed briefly what an offer of proof is?

A  Right.

Q  Okay. And previously I asked you what other significant thing occurred on May 25, 1993. And your statement was?

A  The statement I told you?

Q  Yes.

A  Okay. It was, "There goes that bitch that goes to HR," from over the wall. And also on — on this day, I would like pass coworkers in the hall and stuff; and they didn't — you know — I would say hi to them, and they wouldn't respond to me. So it was like a — you know — an ongoing thing — the harassment — I feel, anyway.

Q  Now, another occurrence on or about mid June 1993 on the job. What happened then?

A  Well, like — you know — I don't want to get into June yet because like the very next day, like on the 26th or 27th —

Q  Go ahead.

A  — okay — I got these anonymous phone calls like every morning at 6:30, calling me a bitch and a slut.

Q  Okay.

A  And I got some, and my husband got some too because I couldn't answer the phone after a while.

Q  Okay.

A  Okay?

Q  Then what happened in mid June 1993?

A  In mid June, I was going to the restroom another time; and I heard this comment from behind this partition: "If you didn't dress like a whore, you wouldn't be treated as one."[1]

---

[1]Ms. Wilson's testimony was not offered to prove the truth of the out-of-court statements, and thus was not hearsay. *See* ER 801(c). Olivetti contends Ms. Wilson's offer of proof was insufficient under ER 103(a)(2), which requires that "the substance of the evidence [be] made known to the court by offer or [be] apparent from the context within which questions were asked." The purposes of an offer of proof are to inform the court of the precise nature of the offered evi-

The trial court excluded this evidence, explaining:

> Now, it seems to me that here, in view of the element that the plaintiff must establish a hostile working environment, that this is really what that kind of testimony is devoted to — not necessarily, as I understand it, what her feelings were, but the environment in which she had to work. And that's the real problem here because it's something, of course, that the defendant can't rebut; and they aren't identified in any way. So I feel that the prejudice is too great to justify the relevance. Certainly it's relevant, but I think the prejudice is too great. I'm going to sustain the objection.

■ Ms. Wilson's sexual harassment claim was for the "hostile work environment" species of gender discrimination under RCW 49.60.180(3). *See DeWater v. State,* 130 Wn.2d 128, 134-35, 921 P.2d 1059 (1996). To establish such a claim, a plaintiff must prove, among other things, that the harassment can be imputed to the employer. *Id.* at 135. Harassment by a nonmanagement employee may be established by showing

> that the employer (a) authorized, knew, or should have known of the harassment and (b) failed to take reasonably prompt and adequate corrective action. This may be shown by proving (a) that complaints were made to the employer through higher managerial or supervisory personnel or by proving such a pervasiveness of sexual harassment at the workplace as to create an inference of the employer's knowledge or constructive knowledge of it and (b) that the employer's remedial action was not of such nature as to have been reasonably calculated to end the harassment.

*Glasgow v. Georgia-Pacific Corp.,* 103 Wn.2d 401, 407, 693 P.2d 708 (1985).

Ms. Wilson's proffered testimony was intended to demonstrate the inadequacy or ineffectiveness of Olivetti's

---

dence and the legal theory under which it is deemed to be admissible, and to create a record for review. *Adcox v. Children's Orthopedic Hosp. & Med. Ctr.,* 123 Wn.2d 15, 26-27, 864 P.2d 921 (1993); *State v. Ray,* 116 Wn.2d 531, 538, 806 P.2d 1220 (1991). The offer need not be "in detail." *Id.* at 539. Ms. Wilson's offer of proof was detailed enough for the trial court, the parties, and this court to understand the issues. It was sufficient.

warning to Mr. Deiss after the May 19 incident. As the trial court recognized, the evidence was relevant.

However, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." ER 403. A trial court's determination is reviewed for manifest abuse of discretion. *Erickson v. Robert F. Kerr, M.D., P.S.*, 125 Wn.2d 183, 191, 883 P.2d 313 (1994). The focus of this balancing is on "unfair prejudice,"

> which one court has termed as prejudice caused by evidence of "scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.' " *United States v. Roark*, 753 F.2d 991, 994 (quoting *United States v. McRae*, 593 F.2d 700, 707 (5th Cir.), *cert. denied*, 444 U.S. 862, 62 L. Ed. 2d 83, 100 S. Ct. 128 (1979)), *reh'g denied*, 761 F.2d 698 (11th Cir. 1985); *see also* 5 K. Tegland, Wash. Prac., *Evidence* § 106, at 349 (3d ed. 1989); *State v. Rice*, 48 Wn. App. 7, 13, 737 P.2d 726 (1987) (in determining prejudice, the linchpin word is "unfair"). Another authority states that evidence may be unfairly prejudicial under rule 403 if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or "triggers other mainsprings of human action." 1 J. Weinstein & M. Berger, *Evidence* § 403[03], at 403-36 (1985). Washington cases are in agreement, stating that unfair prejudice is caused by evidence likely to arouse an emotional response rather than a rational decision among the jurors. *Lockwood v. AC&S, Inc.*, 109 Wn.2d 235, 257, 744 P.2d 605 (1987); *State v. Cameron*, 100 Wn.2d 520, 529, 674 P.2d 650 (1983).

*Carson v. Fine*, 123 Wn.2d 206, 223, 867 P.2d 610 (1994); *see Erickson*, 125 Wn.2d at 190.

In this case, the evidence was directly relevant to an allegation that Ms. Wilson had the burden of proving. Her purpose in offering the testimony was not solely or primarily to evoke a sympathetic response with the trier of fact.

Olivetti contends the trial court properly concluded the

evidence was prejudicial because Olivetti had no ability to rebut Ms. Wilson's testimony. This is no more true here than it is with *any* testimony about an event. On remand, Olivetti will be free to impeach Ms. Wilson's testimony, cross-examine her about the alleged events, and present the testimony of other witnesses in rebuttal.

■ Evidence is not inadmissible under ER 403 simply because it is detrimental or harmful to the interests of the party opposing its admission; it is prejudicial only if it has the capacity to skew the truth-finding process. *See State v. Hudlow*, 99 Wn.2d 1, 12-13, 659 P.2d 514 (1983). Ms. Wilson's proffered testimony was highly relevant and was not unfairly prejudicial. The trial court abused its discretion by excluding it.[2]

On cross-appeal, Olivetti contends Ms. Wilson's claim was frivolous. We agree with the trial court, which properly determined the claim was not frivolous and denied attorney fees. We also deny attorney fees on appeal.

The judgment is reversed and the case is remanded for a jury trial.

SCHULTHEIS, A.C.J., and KURTZ, J., concur.

Reconsideration denied May 30, 1997.

Review denied at 133 Wn.2d 1017 (1997).

---

[2]Olivetti contends the error was harmless. *See Maicke v. RDH, Inc.*, 37 Wn. App. 750, 754, 683 P.2d 227, *review denied*, 102 Wn.2d 1014 (1984). The excluded testimony was critical circumstantial evidence suggesting that Olivetti's warning to Mr. Deiss failed to remedy the problem. The error was not harmless.