# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| SUZETTE GOULD and JAMES GOULD, wife and husband, | No.  46358-0-II |
| Respondents, | |
| v. | |
| NORTH KITSAP BUSINESS PARK MANAGEMENT, LLC, a Washington corporation, | UNPUBLISHED OPINION |
| Appellant, | |
| NORTH KITSAP BUSINESS PARK, INC., a Washington corporation, | |
| Defendant. | |

JOHANSON, C.J. — North Kitsap Business Park Management, LLC (North Kitsap) appeals

from a judgment in James and Suzette Gould's favor for injuries Suzette[1] sustained when she

tripped over an object as she walked toward Paul and Suzanne Marshall's business.  We hold that

(1) North Kitsap waived its right to a jury trial, (2) the trial court did not abuse its discretion by

considering Suzette's expert's testimony, (3) the trial court properly ordered North Kitsap to pay

---

[1] Several parties to this dispute share common surnames.  We refer to those parties by their first names for clarity, intending no disrespect.

sanctions for disclosing an expert late, and (4) substantial evidence supports each of the challenged findings of fact and the trial court's conclusions are supported by applicable law. We affirm.

FACTS

I. BACKGROUND

In December 2009, Suzette's employer, Frontier Bank, instructed Suzette to visit two businesses owned by the Marshalls to spread Christmas cheer by visiting her clients and distributing Christmas cards. The Marshalls had outstanding commercial loans through Suzette's bank related to their businesses, DSC Industrial Supply and Road Rider Supply, which were both located at North Kitsap in adjacent suites. Suzette had been to DSC briefly once before and did not know the Marshalls socially, so in her view the visit would help to build their professional relationship.

Suzette arrived about midday and parked in front of DSC. She entered the business and spoke with Suzanne. While there, Suzette took a brief tour of the store and made a purchase. When Suzette asked about Suzanne's husband Paul, Suzanne said that Paul was working at Road Rider in the suite next door and invited her to go say hello.

Suzette left DSC, walked around a landscaping partition, saw Road Rider's awning and signage, and proceeded in a "beeline" for the front door. Report of Proceedings (RP) (Mar. 11, 2014) at 182. But before she reached the entry of Road Rider, Suzette "wound up on the ground," hitting her head on the door as she fell. RP (Mar. 11, 2014) at 182. Suzette had seen no obstruction in her pathway.

Suzette, embarrassed and uncertain what had happened, tried to pick herself up, but could not because she felt excruciating pain. She yelled for help and Paul came to her aid. Suzette had

2

tripped over a concrete "wheel stop" that had been installed directly in front of the door to Road Rider. Clerk's Papers (CP) at 590. Suzette suffered a broken arm and a dislocated elbow in the fall.

## II. PROCEDURE

### A. PRETRIAL

In April 2011, Suzette filed a lawsuit seeking damages against North Kitsap, alleging that North Kitsap was negligent because its wheel stop was not painted and did not contrast with the surrounding pavement outside Road Rider's main entry door.

The case was originally noted for a trial setting on February 10, 2012, but was delayed several times, ultimately setting the trial for October 7, 2013. On March 29, 2013, North Kitsap filed a motion requesting a jury trial. At the ensuing hearing, North Kitsap conceded that it had missed the deadline to request a jury trial, but urged the court to exercise its discretion to grant the motion notwithstanding North Kitsap's oversight. The trial court denied the motion, ruling that North Kitsap had not complied with the applicable court rule and concluded that mere oversight was not enough to compel the court to exercise its discretion otherwise.

Also before trial, each party moved in limine to exclude the expert testimony of the other. Suzette argued that Mark Uchimura's testimony should be excluded because North Kitsap failed to disclose him as their expert contrary to CR 26(e). In response, North Kitsap argued that it had disclosed its expert by the report it attached to its summary judgment motion combined with its agreement to continue the hearing date for the summary judgment motion upon Suzette's request. The trial court ruled that North Kitsap had failed to disclose its expert in the manner required by CR 26(e), and it imposed a financial sanction.

3

Meanwhile, North Kitsap moved to exclude the testimony of Stan Mitchell, Suzette's expert, arguing that Mitchell lacked the necessary credentials. As to that request, the trial court instructed North Kitsap to renew its objections contemporaneously with Mitchell's testimony.

## B. TRIAL

The Marshalls, the Goulds, and their respective experts testified at trial. Of paramount importance was Mitchell's expert testimony. Mitchell, a professional architect, had an extensive amount of experience with construction management and planning, prepurchase home inspections, and consulting for property owners. Mitchell's business had also been engaged in at least some amount of forensic consulting work for 35 years at the time of trial. According to Mitchell, approximately 70 percent of his forensic consulting involved issues of pedestrian safety.

As a member of his profession, Mitchell maintains a working knowledge of building codes and standards. Mitchell's previous inspection work had included parking lot inspections. When asked about visual perception factors involved in architectural design, Mitchell stressed the importance of visibility in designs of structures intended for pedestrian use because pedestrians need to be able to see walking surfaces and transitions.

Mitchell conducted a site visit at the location of the incident and generated a report of his findings. The weather, the configuration of the two buildings, and what would be included in a pedestrian's "cone of vision" were all variables that Mitchell considered as he attempted to recreate Suzette's path. RP (Mar. 10, 2014) at 16. Mitchell described the wheel stop as approximately five feet out from the entry door, roughly five-and-a-half inches high, and a concrete gray color that blended in with the weathered asphalt.

4

Mitchell then explained how the conditions and the parking lot configuration would affect a pedestrian's ability to perceive the wheel stop from the path that Suzette would have taken. In Mitchell's view, it would have been very difficult to perceive the wheel stop because it was not painted an offset color, the parking lot sloped slightly, and the top edge of the wheel stop was below the building's siding, making it less visually prominent. According to Mitchell, the sun and shadows were also contributing factors on the day of the incident. Considering these features, Mitchell opined, over North Kitsap's foundation and relevance objection, that someone unfamiliar with the property, behaving normally, would not have perceived the wheel stop under the conditions as they were.

It was also Mitchell's opinion that Suzette would have been less likely to expect to encounter a wheel stop in front of Road Rider because she had just exited the adjacent suite, which had no such wheel stop in front of its door. Mitchell also discussed the applicable Kitsap County Code (KCC) provisions and determined that use of a wheel stop in such a position was not compliant with the code because the code calls for curbs or "bumper rail[s]." RP (Mar. 10, 2014) at 35. The question of compliance with the KCC was a highly-contested issue.

Suzette's husband James also testified. James was employed as a Federal Express courier and had delivered packages to the North Kitsap Business Park regularly for years at the time of the incident. Shortly after Suzette's surgery, James had a delivery for Suzanne. James testified that during a brief conversation with Suzanne that included questions about Suzette's recovery, James asked Suzanne whether they had ever considered moving or painting "the block." RP (Mar. 10, 2014) at 135. According to James, Suzanne responded that they had considered doing so because either she or Paul had tripped over "the block" too. RP (Mar. 10, 2014) at 135.

But the Marshalls denied ever having tripped over the wheel stop and Suzanne denied saying this to James. Furthermore, the Marshalls recalled speaking with Suzette moments after her fall. According to the Marshalls, Suzette said that she had not been paying attention when she fell and that she felt foolish because she was "looking up." RP (Mar. 12, 2014) at 272, 360. Suzette testified consistently with the background facts set forth above.

### C. COURT'S FINDINGS AND CONCLUSIONS

The trial court ruled in Suzette's favor. The court memorialized its ruling in detailed findings of fact and conclusions of law, the following of which relate to this appeal:

### I. FINDINGS OF FACT

. . . .

10. On December 23, 2009, Suzette Gould delivered Christmas cards to the Marshalls, as the bank's expression of appreciation for the Marshalls' banking business, to their business located at the North Kitsap Business Park.

. . . .

12. Suzette Gould entered Suite E, which was unobstructed by any wheel stop. Suzette Gould met with Suzanne Marshall, delivered a card, and made a purchase of an item for her husband from the Marshalls' store. She was then directed to Suite D next door to see Paul Marshall.

. . . .

14. Suzette Gould was looking at the door of Suite D [Road Rider] as she approached, when she tripped over the wheel stop in front of the door. Her body fell forward into the door and the impact with the front door made a loud noise.

. . . .

16. The testimony of Stanley Mitchell was credible.

17. Stanley Mitchell concluded that the concrete wheel stop in front of the door of Suite D blended in color with the surrounding weathered pavement. That testimony was corroborated by Exhibits 15, 16, 21 through 25, and 28, and particularly by Exhibits 16, 21, 22 and 23, which showed the wheel stop was not clearly visible due to its configuration and discoloration, making the wheel stop the same color as or somewhat camouflaged by the aged asphalt.

18. Both parties called experts regarding the building codes. Because the existing wheel stop was not clearly visible, there is no need to address compliance or noncompliance with building codes.

6

19.     The Court specifically finds credible James Gould's testimony that Ms. Marshall admitted to him that she had tripped over the wheel stop in the past. Therefore, Ms. Marshall was aware of the hazardous condition.

. . . .

21.     It was undisputed that Suzette Gould had not been to Suite D or Suite E before December 23, 2009.

. . . .

23.     Suzette Gould's fall was due to tripping over the wheel stop that was not clearly visible and was somewhat camouflaged.

. . . .

## II.  CONCLUSIONS OF LAW

1.     Suzette Gould was an invitee of the Marshalls, and thus of the Defendant North Kitsap Business Park Management, LLC.

2.     The Defendant owed to Suzette Gould, an invitee, a duty to exercise ordinary care for her safety, including to maintain in a reasonably safe condition those portions of the premises that the invitee is expressly or impliedly invited to use or might reasonably be expected to use.

3.     The subject wheel stop was not clearly visible, and was somewhat camouflaged, rendering it not reasonably safe.

4.     The Defendant, aware of the hazard, breached its duty when it failed to make the wheel stop more visible or to warn Ms. Gould of the hazard.

5.     Suzette Gould had no duty to look for a wheel stop by keeping her eyes fixed on the ground immediately ahead of her. *See Todd v. Harr, Inc.*, 69 Wn.2d 166[, 417 P.2d 945 (1966)].

6.     Suzette Gould was not contributorily negligent.

7.     The breach of duty by the defendant was the proximate cause of Suzette and James Gould's injuries in fact.

CP at 257-61.  North Kitsap appeals.

ANALYSIS

I.  JURY TRIAL

North Kitsap contends that the trial court abused its discretion by denying its jury trial request.  Because North Kitsap did not comply with the procedural requirements of CR 38, we disagree.

In Washington, the right to a trial by jury is "inviolate" and neither legislative nor judicial action can impair it.  WASH. CONST. art. I, § 21; *see Sofie v. Fibreboard Corp.*, 112 Wn.2d 636,

656, 771 P.2d 711, 780 P.2d 260 (1989). CR 38(a) preserves this constitutional right, but CR 38(d) provides that "[t]he failure of a party to [1] serve a demand as required by this rule, [2] to file it as required by this rule, and [3] to pay the jury fee required by law in accordance with this rule, constitutes a *waiver* by the party of trial by jury." (Emphasis added.) CR 38(d) is constitutional and enforceable.[2] *Saldivar v. Momah*, 145 Wn. App. 365, 391, 186 P.3d 1117 (2008).

Absent an abuse of discretion, we will not overturn the trial court's decision to deny a jury demand after previous waiver. *Saldivar*, 145 Wn. App. at 391. Substantial compliance with CR 38 may be sufficient if the other party has actual notice of the jury demand. *Wilson v. Olivetti N. Am., Inc.*, 85 Wn. App. 804, 810, 934 P.2d 1231 (1997).

North Kitsap cites *Wilson* to support its argument that the trial court abused its discretion by denying its request for a trial. There, Wilson complied with CR 38 by submitting a jury demand, but failed to serve the demand on the opposing party as required by a local court rule. *Wilson*, 85 Wn. App. at 808. Division Three of this court held that because Wilson's pleadings included statements that she was demanding a jury trial, Wilson had not waived her right to a jury trial because she had substantially complied with the procedural notice requirements and the opposing party, therefore, had actual knowledge that Wilson was seeking a jury trial. *Wilson*, 85 Wn. App. at 810.

But here, North Kitsap did not comply with the procedural requirements in CR 38(b). At the hearing on its motion, North Kitsap admitted that it had not done so. Nor did North Kitsap argue that it had substantially complied with the court rule; it simply asked the court to exercise

---

[2] The language of CR 38(d) has been amended since the trial concluded replacing the word "him" with "the party." This amendment has no bearing on the issues we decide here.

its discretion to grant its motion despite its mistake. The trial court was not persuaded to do so because of mere oversight by North Kitsap, so it denied North Kitsap's motion, ruling that it had waived its right to a jury trial. We hold that this was not an abuse of the trial court's discretion under the plain terms of CR 38(d).

## II. EXPERT TESTIMONY

North Kitsap argues that the trial court abused its discretion by denying its motion to exclude Mitchell's testimony. This argument fails because Mitchell's experience rendered him qualified to testify as an expert.

A party may introduce expert testimony if the expert is qualified, relies on generally-accepted theories, and assists the trier of fact. ER 702. But an expert may not testify about information outside his area of expertise. *Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha*, 126 Wn.2d 50, 103-04, 882 P.2d 703, 891 P.2d 718 (1994). Determining the admissibility of expert evidence is largely within a trial court's discretion. *Philippides v. Bernard*, 151 Wn.2d 376, 393, 88 P.3d 939 (2004). "'[T]he exercise of [such discretion] will not be disturbed by an appellate court except for a very plain abuse thereof.'" *In re Marriage of Katare*, 175 Wn.2d 23, 38, 283 P.3d 546 (2012) (alterations in original) (internal quotation marks omitted) (quoting *Hill v. C. & E. Constr. Co.*, 59 Wn.2d 743, 746, 370 P.2d 255 (1962)).

First, North Kitsap contends that Mitchell failed to support his opinions with citations to the applicable building code provisions. This argument misstates Mitchell's testimony. Mitchell testified at length regarding compliance with the code and specifically disagreed with the opposition's expert that the KCC required the use of wheel stops for this parking lot configuration.

9

Second, North Kitsap contends that Mitchell testified outside his expertise by opining as to what was in Suzette's "cone of vision." Br. of Appellant at 37. But an expert may be qualified by experience alone. ER 702; *Katare*, 175 Wn.2d at 38. And Mitchell explained that he had conducted thousands of inspections, including those involving parking lots. Mitchell also explained that architects like himself study how to predict pedestrian behavior and what pedestrians perceive, especially regarding shape and color.

North Kitsap's own expert, a professional engineer, testified that he was not an expert in pedestrian safety or human factors and admitted that he would defer questions of that nature to an architect. And furthermore, none of the trial court's findings of fact or conclusions of law relied on the aspects of Mitchell's expertise that North Kitsap challenges here. The findings simply stated that the trial court found Mitchell credible and that he concluded that the wheel stop was not visible because it contrasted with the surrounding pavement. We hold that the trial court did not abuse its discretion by considering Mitchell's testimony.

### III. DISCOVERY SANCTIONS IMPOSED

Next, North Kitsap argues that the trial court abused its discretion by ordering North Kitsap to pay for the costs of Suzette's deposition of Uchimura because North Kitsap did not timely disclose its expert witness under CR 26. North Kitsap is incorrect.

A trial court exercises broad discretion in imposing discovery sanctions and its determination will not be disturbed absent a clear abuse of discretion. *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006). An abuse of discretion occurs when a decision is manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons. *Mayer*, 156 Wn.2d at 684. A discretionary decision rests on "untenable grounds" or is based on "untenable

reasons" if the trial court relies on unsupported facts or applies the wrong legal standard. *Mayer*, 156 Wn.2d at 684.

CR 26(e)(1)(B) places a duty upon the parties to timely supplement responses to interrogatories requesting information about expert witnesses. Exclusion of the expert's testimony is an appropriate sanction for failure to supply such supplementary responses. *Detwiler v. Gall, Landau & Young Constr. Co.*, 42 Wn. App. 567, 572-73, 712 P.2d 316 (1986). "[L]ate-disclosed testimony will be admitted absent a willful violation, substantial prejudice to the nonviolating party, and the insufficiency of sanctions less drastic than exclusion." *Jones v. City of Seattle*, 179 Wn.2d 322, 343, 314 P.3d 380 (2013).

Here, the trial court found that it was undisputed that North Kitsap had failed to supplement its discovery responses and that no disclosure of the expert had occurred. But rather than excluding Uchimura's testimony, the court found that a lesser sanction, requiring North Kitsap to pay Suzette's deposition costs, would suffice under the circumstances because, in the trial court's view, the prejudice that Suzette suffered was not so significant to warrant exclusion.[3] The trial court considered and imposed a lesser sanction after considering the prejudice the late disclosure

---

[3] There is some dispute between the parties regarding whether *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 933 P.2d 1036 (1997), applies in this instance. In *Burnet*, our Supreme Court ruled that a trial court must consider certain factors on the record before it imposes a "harsh" remedy under the discovery rules. 131 Wn.2d at 494. One such factor is the sufficiency of a lesser sanction. *Burnet*, 131 Wn.2d at 494. Here, in response to Suzette's request to exclude Uchimura— what would presumably be considered a "harsh" remedy—the trial court clearly considered, and in fact imposed, the lesser sanction of deposition costs. Therefore, to the extent that *Burnet* applies, it does not help North Kitsap and does not compel the conclusion that the trial court's decision to impose costs was an abuse of its discretion.

effected upon Suzette. Therefore, we hold that the trial court did not abuse its discretion by ruling that North Kitsap was responsible for Suzette's discovery costs as a sanction for late disclosure.

IV. NEGLIGENCE ESTABLISHED

A. STANDARD OF REVIEW

North Kitsap contends that substantial evidence does not support several of the trial court's findings of fact. North Kitsap also challenges several of the trial court's conclusions of law regarding North Kitsap's alleged negligence. We reject these contentions in full.

We review the trial court's decision following a bench trial to determine whether the findings are supported by substantial evidence and whether those findings support the conclusions of law. *Sunnyside Valley Irrig. Dist. v. Dickie*, 149 Wn.2d 873, 879-80, 73 P.3d 369 (2003). The label applied to a finding or conclusion is not determinative; we "'will treat it for what it really is.'" *Nguyen v. City of Seattle*, 179 Wn. App. 155, 163, 317 P.3d 518 (2014) (quoting *Para-Med. Leasing, Inc. v. Hangen*, 48 Wn. App. 389, 397, 739 P.2d 717 (1987)).

We will not disturb findings of fact supported by substantial evidence even if there is conflicting evidence. *Merriman v. Cokeley*, 168 Wn.2d 627, 631, 230 P.3d 162 (2010). And we defer to the trial judge on issues of witness credibility and persuasiveness of the evidence. *Boeing Co. v. Heidy*, 147 Wn.2d 78, 87, 51 P.3d 793 (2002). Substantial evidence is a quantum of evidence sufficient to persuade a rational and fair-minded person that the premise is true. *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 176, 4 P.3d 123 (2000).

There is a presumption in favor of the trial court's findings and the party claiming error must show that a finding of fact is not supported by substantial evidence. *Fisher Props., Inc. v. Arden-Mayfair, Inc.*, 115 Wn.2d 364, 369, 798 P.2d 799 (1990). And we do not substitute our

judgment for that of the trial court even if we might have resolved the factual dispute differently. *Dickie*, 149 Wn.2d at 879-80. Unchallenged findings of fact are verities on appeal. *In re Estate of Jones*, 152 Wn.2d 1, 8, 93 P.3d 147 (2004). We review conclusions of law de novo. *Dickie*, 149 Wn.2d at 879-80.

To establish the elements of an action for negligence, the plaintiff must show (1) the existence of a duty owed, (2) a breach of that duty, (3) a resulting injury, and (4) a proximate cause between the breach and the injury. *Iwai v. State*, 129 Wn.2d 84, 96, 915 P.2d 1089 (1996). Whether a legal duty exists is a question of law, but whether a party has breached a duty is a question of fact. *See Hertog, ex rel. S.A.H. v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999). Similarly, unless reasonable minds could not differ, proximate cause is a question for the trier of fact. *Hertog*, 138 Wn.2d at 275.

## B.  DUTY OWED

North Kitsap argues that the trial court erred by concluding that Suzette was an invitee as opposed to a licensee. Because the facts surrounding Suzette's visit were undisputed and because North Kitsap appears to challenge only the trial court's determination as a matter of law, we hold that the trial court properly concluded that North Kitsap owed Suzette a duty as a business invitee.

The legal duty owed by a possessor of land to a person entering the premises depends on whether the entrant falls under the common law category of a trespasser, licensee, or invitee. *See Younce v. Ferguson*, 106 Wn.2d 658, 662, 724 P.2d 991 (1986). When the facts regarding a visitor's entry onto property are undisputed, the visitor's legal status as invitee, licensee, or trespasser is a question of law. *Beebe v. Moses*, 113 Wn. App. 464, 467, 54 P.3d 188 (2002).

A business invitee is "'a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.'" *Beebe*, 113 Wn. App. at 467 (quoting RESTATEMENT (SECOND) OF TORTS § 332 (1965)). An indirect business purpose on the property is sufficient for classification as a business invitee. RESTATEMENT, *supra*, cmt. *f* ("It is not necessary that the visitor's purpose be to enter into immediate business dealings with the possessor. The benefit to the possessor may be indirect and in the future.").

In contrast, a "licensee" enters the occupier's premises with the occupier's permission or tolerance, either (a) without an invitation or (b) with an invitation but for a purpose unrelated to any business dealings between the two. *Thompson v. Katzer*, 86 Wn. App. 280, 285, 936 P.2d 421 (1997). The term "licensee" includes, at a minimum, (1) persons who come on the land solely for purposes of their own, (2) members of the occupier's household (except a boarder, servant, or other person whose relationship with the occupier is primarily economic), and (3) social guests. *Thompson*, 86 Wn. App. at 285. The ultimate goal is to differentiate (1) an entry made for a business or economic purpose that benefits both entrant and occupier from (2) an entry made for a purpose that either (a) benefits only the entrant or (b) is primarily familial or social. *Thompson*, 86 Wn. App. at 286.

Here, the facts regarding Suzette's visit were not in dispute. Based on these facts, the trial court concluded that Suzette was a business invitee. North Kitsap, however, asserts that Suzette was a licensee by law rather than an invitee because the purpose of her visit to DSC and Road Rider was, at most, solely to benefit herself because she was there to promote bank business. But the purpose of Suzette's visit was not merely to benefit herself. Instead, she went to visit the

Marshalls at the behest of her supervisor because the Marshalls were commercial customers of Suzette's bank with outstanding commercial loans.

Although part of Suzette's visit was to spread Christmas cheer, the trial court found that Suzette delivered the Christmas cards as an expression of her employer's appreciation for the Marshalls' banking business. Clearly, part of the impetus behind Suzette's visit on the day of the incident was to continue to cultivate the existing business relationship between herself and the Marshalls as her clients. Suzette also made a purchase at DSC. Her visit was not purely social.[4]

The relationship between the bank and the Marshalls was a mutually beneficial arrangement because the bank enjoyed the Marshalls' continued business, while the Marshalls reaped the benefits of the bank's financial assistance. In this way, Suzette's visit was made for a business purpose that benefited both entrant and occupier and, therefore, the visit was, at a minimum, "'indirectly connected with business dealings with the possessor of the land.'" *Beebe*, 113 Wn. App. at 467 (quoting RESTATEMENT, *supra*). The trial court's findings of fact support its conclusion that Suzette was a business invitee rather than a licensee and, therefore, we hold that the trial court did not err as a matter of law.

## C. BREACH OF DUTY TO INVITEE

Kitsap argues that it did not breach the duty it owed to Suzette as an invitee because (1) Suzette had knowledge of the wheel stop, (2) the wheel stop was not a hazardous condition and

---

[4] North Kitsap also argues that if Suzette is considered an invitee based on her DSC purchase, she lost that status when she left DSC and proceeded to Road Rider. Because we conclude Suzette was an invitee based on a mutually beneficial commercial relationship and not based on the purchase she made, we need not consider this particular argument.

(3) North Kitsap lacked the required notice that a hazardous condition existed. We address each argument in turn.[5]

A landowner must follow a specific set of duties for invitees. *Tincani v. Inland Empire Zoological Soc.*, 124 Wn.2d 121, 138-39, 875 P.2d 621 (1994). Whether a landowner breaches that duty is a question of fact. *Nivens v. 7-11 Hoagy's Corner*, 83 Wn. App. 33, 47, 920 P.2d 241 (1996), *aff'd*, 133 Wn.2d 192, 943 P.2d 286 (1997). According to *Restatement*, *supra*,

> "[a] possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, [the possessor]
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger."

*Tincani*, 124 Wn.2d at 138 (second alteration in original) (quoting RESTATEMENT, *supra*).

An invitee "'is . . . entitled to expect that the possessor will exercise reasonable care to make the land safe for his [or her] entry.'" *Tincani*, 124 Wn.2d at 138-39 (alteration in original) (quoting RESTATEMENT, *supra*, cmt. *b*). Reasonable care requires the landowner to inspect for dangerous conditions, "'followed by such repair, safeguards, or warning as may be reasonably

---

[5] Alternatively, in support of the proposition that North Kitsap did not breach its duty of care, North Kitsap argues that Title 17 of the KCC requires parking spaces to be contained "by a curb or bumper rail, such as a wheel stop." Br. of Appellant at 21. But first, as explained below, the trial court correctly determined that the KCC has no bearing on the outcome because even if permitted or outright required by the code, the subject wheel stop here was a dangerous condition because it was not adequately visible to pedestrians. And second, the provision of the KCC that North Kitsap references, KCC 17.435.020, actually contains no mention of wheel stops.

necessary for [the invitee's] protection under the circumstances.'"[6]  *Tincani*, 124 Wn.2d at 139

(alteration in original) (quoting RESTATEMENT, *supra*, cmt. *b*).

1.  SUZETTE'S ACTUAL KNOWLEDGE

North Kitsap argues that it cannot be liable for breach of the duty it owed Suzette because

Suzette knew of the dangerous condition and there is no duty on the part of a landowner to warn a

business invitee regarding conditions about which the invitee has actual knowledge.  We disagree

because the evidence does not establish that Suzette had actual knowledge of the condition.

North Kitsap correctly recognizes that Washington courts have long held that there is no

duty to warn a business invitee about conditions of which the invitee has actual knowledge.  *Barker*

*v. Skagit Speedway, Inc.*, 119 Wn. App. 807, 813, 82 P.3d 244 (2003).  According to North Kitsap,

Suzette had actual knowledge because she had visited the same parking lot in the past and she also

had significant general knowledge of wheel stops and their use in parking lots.

As part of its oral ruling, the trial court found that Suzette was unaware of any tripping

hazard that may have been present.[7]  When asked whether she had ever been to the location of the

incident before the day of her fall, Suzette testified that she recalled having been there once before,

but that she had only been there briefly and her visit was limited to DSC.  But Suzette did not fall

in the parking lot in front of DSC; she fell while attempting to enter the Road Rider suite.  Merely

because Suzette had once been in the parking area adjacent to the one in which she fell does not

---

[6] Each party argues in the alternative in the event that we hold that Suzette was a licensee rather than an invitee.  Because we hold that Suzette was an invitee, we do not reach these arguments.

[7] We may look to the trial court's oral ruling to supplement its written order.  *See, e.g.*, *Shelden v. Dep't of Licensing*, 68 Wn. App. 681, 684-85, 845 P.2d 341 (1993).

support the notion that Suzette must have been aware of the condition created by the particular wheel stop that actually caused her fall. Consequently, the trial court's finding is supported by substantial evidence.

And North Kitsap's argument that Suzette was generally aware that wheel stops are used in parking lots is equally unpersuasive. Suzette did not argue every wheel stop is inherently dangerous no matter the circumstances. Her claim is that this specific wheel stop and the accompanying circumstances created a dangerous condition about which she should have been warned.

A business owner has a duty to take reasonable precautions to protect an invitee from dangers that are foreseeable from the use of their property. *Barker*, 119 Wn. App. at 812. The trial court's finding that Suzette was unaware of the condition was supported by substantial evidence. Accordingly, contrary to its assertion, North Kitsap is not absolved from liability because Suzette lacked actual knowledge of the hazardous condition.

2. HAZARDOUS CONDITION

Alternatively, North Kitsap argues that the trial court erred by concluding it breached its duty to Suzette because the wheel stop did not constitute a hazardous condition and, therefore, no liability can exist. According to North Kitsap, this is so because the wheel stops were "open and obvious" and Suzette should have noticed them. Br. of Appellant at 12. We disagree.

Where an alleged unsafe condition is both obvious and known to the plaintiff, the defendants owe no duty to warn of this condition. *Mele v. Turner*, 106 Wn.2d 73, 80, 720 P.2d 787 (1986); *Seiber v. Poulsbo Marine Ctr., Inc.*, 136 Wn. App. 731, 740, 150 P.3d 633 (2007). As explained previously, the unsafe condition was not known to Suzette. Nevertheless, North Kitsap

asserts that it should be shielded from liability based on the fact that other jurisdictions have concluded that wheel stops do not constitute an unreasonable risk of harm.

But the cases North Kitsap cites are clearly distinguishable from the present case. For instance, in *Price v. Roadhouse Grill, Inc.*, 512 F. Supp. 2d 511, 513, 518 (W.D. La. 2007), a Louisiana district court held that a property owner was not liable for injuries sustained by a restaurant patron when she tripped over a "car stop" in the parking lot. In so holding, the court said the restaurant was not liable because it painted the car stops with a color intended to contrast with the surrounding parking lot that was sufficient to notify an ordinary person of the elevation change and, moreover, the testimony established that the injured patron had been to the restaurant and perhaps even in the very same handicap parking spot several times in the year before her injury. *Price*, 512 F. Supp. 2d at 518.

And in *Ramsey v. Home Depot U.S.A., Inc.*, 124 So. 3d 415, 417 (Fla. Dist. Ct. App. 2013), a Florida court declined to impose liability for trip and fall injuries sustained by a Home Depot customer when that customer tripped over a wheel stop that featured a bright yellow concrete bollard with an accessibility sign mounted on the middle of the wheel stop.

Other cases North Kitsap cites stand for the proposition that a concrete parking lot divider, *which is clearly visible*, presents no unreasonable risk of harm and was, therefore, not a dangerous condition. *Plessias v. Scalia Home for Funerals*, 271 A.D.2d 423, 423-24, 706 N.Y.S.2d 131 (2000); *Cardia v. Willchester Holdings, LLC*, 35 A.D.3d 336, 825 N.Y.S.2d 269 (2006); *Bennett v. Cole*, 426 So. 2d 829, 831 (Ala. Civ. App. 1981), *aff'd*, 426 So. 2d 832 (Ala. 1982).

Here, the trial court found that the evidence established that Suzette had not been to the parking lot in front of Road Rider before her fall. Suzette testified that she had not observed any

obstruction in her pathway. And Mitchell opined that someone who was unfamiliar with the property, behaving normally, would not have perceived the subject wheel stop under the conditions as they were.

Unlike the cases it cites, North Kitsap presented no evidence to establish that the wheel stop in its parking lot had been painted a contrasting color or had signage to draw attention to its presence. North Kitsap has not demonstrated that the wheel stop was open and obvious or that it was clearly visible. Therefore, the trial court's findings that Suzette tripped because she did not see the wheel stop and that the wheel stop was not clearly visible, were supported by substantial evidence. Accordingly, we hold that North Kitsap's argument fails.

3. NOTICE

North Kitsap next argues that substantial evidence does not support the trial court's finding that the Marshalls had notice that the wheel stop was a dangerous condition. North Kitsap contends that James's testimony does not constitute substantial evidence because the court made no finding as to credibility and also that the trial court's finding regarding notice is directly contradicted by the fact that Road Rider had been issued a certificate of occupancy. We disagree.

Washington law requires plaintiffs to show the landowner had actual or constructive notice of the unsafe condition. *See Ingersoll v. DeBartolo, Inc.*, 123 Wn.2d 649, 652, 869 P.2d 1014 (1994). The notice requirement ensures liability attaches to owners only when they have become or should have become aware of a dangerous situation. *Iwai*, 129 Wn.2d at 96-97.

Here, North Kitsap argues that substantial evidence does not support the trial court's finding that the Marshalls knew of the dangerous condition in part because the finding was based upon James's testimony, which was equivocal in that he could not positively identify whether it

was Suzanne or Paul who claimed to have tripped over the wheel stop. James testified that Suzanne, referring to herself and her husband, told him that "[she] or [they] had tripped over the block" sometime before Suzette's incident. RP (Mar. 10, 2014) at 135.

And as part of its findings, the court stated that it "specifically finds credible James Gould's testimony that Ms. Marshall admitted to him that she had tripped over the wheel stop in the past. Therefore, Ms. Marshall was aware of the hazardous condition." CP at 591. North Kitsap does not assign error to this finding and, therefore, it is a verity on appeal. *Jones*, 152 Wn.2d at 8. Consequently, substantial evidence, in the form of James's testimony, supports the court's finding that the Marshalls had notice of the dangerous condition.[8] We so hold.

Considering the foregoing, we conclude that substantial evidence supported the trial court's finding that North Kitsap breached the duty it owed Suzette as an invitee because the evidence established that the camouflaged wheel stop constituted a dangerous condition that was known to the Marshalls, unknown to Suzette, and that involved an unreasonable risk of harm to invitees on the premises. Accordingly, we hold that North Kitsap's argument fails

### D. CAUSATION AND CONTRIBUTORY NEGLIGENCE

North Kitsap makes several arguments related to causation. The central premise of these claims is that Suzette contributed in some way to her injuries such that North Kitsap is either exempt from liability completely or some fault should have been attributed to Suzette. North Kitsap contends that the wheel stop was not the cause of Suzette's injuries because she was not looking in front of her as she walked. Therefore, North Kitsap argues that the trial court erred both

---

[8] Because substantial evidence supports the trial court's finding based on James's testimony alone, we do not consider North Kitsap's argument that the Marshalls' certificate of occupancy undermines Suzette's argument that they had notice of the dangerous condition.

by concluding that Suzette had no "duty of seeing" and by determining as a matter of law that comparative fault did not apply. Br. of Appellant at 21. Again, we disagree.

In order to prove contributory negligence, the defendant must show that the plaintiff had a duty to exercise reasonable care for her own safety, that she failed to exercise such care, and that this failure is a cause of her injuries. *Gorman v. Pierce County*, 176 Wn. App. 63, 87, 307 P.3d 795 (2013), *review denied*, 179 Wn.2d 1010 (2014). Every person has a duty to look out for his own safety and to use a degree of care which a "'reasonably prudent person of ordinary intelligence would exercise under like or similar circumstances.'" *Daly v. Lynch*, 24 Wn. App. 69, 72, 600 P.2d 592 (1979) (quoting *Smith v. Mannings, Inc.*, 13 Wn.2d 573, 577, 126 P.2d 44 (1942)).

Here, North Kitsap argues that the trial court's conclusion that Suzette had no duty to look for the wheel stop was contrary to Washington law because Suzette was aware that wheel stops were present in the parking lot and because Suzette admitted that she was not looking where she was going when she fell. But North Kitsap offers no citation to the record to support the assertion that Suzette ever claimed to know that there were wheel stops in the particular parking lot in which she fell. Furthermore, Suzette did not testify that she was not looking where she was walking. Rather, Suzette testified that she saw the signage on Road Rider's building and walked straight towards the door.

And as the trial court correctly recognized, while the law does require every person to use the degree of care that a reasonably prudent person would use, it does not require a pedestrian to keep their eyes affixed on their path, unless a danger is open and obvious. *Todd*, 69 Wn.2d at 170-71. Accordingly, the trial court's conclusion that Suzette "had no duty to look for a wheel stop by

keeping her eyes fixed on the ground immediately ahead of her" was adequately supported by authority. CP at 593.

North Kitsap has not shown that Suzette failed to exercise reasonable care in her approach to the entryway and that this oversight was the cause of her injuries. *Gorman*, 176 Wn. App. at 87-88. Accordingly, we hold that the trial court did not err by concluding that North Kitsap's breach of the duty it owed to Suzette was the proximate cause of her injuries and that Suzette was not contributorily negligent.

E.  OTHER CHALLENGED FINDINGS

North Kitsap makes several additional arguments that can be characterized as challenges to the trial court's findings of fact. It argues that (1) the court erred by including in its findings of fact that it was unnecessary to consider evidence of North Kitsap's compliance with the KCC, (2) the trial court's finding that Suzanne "directed" Suzette to visit Paul is not supported by the evidence, and (3) the trial court's findings that Suzette was looking at the door of Road Rider as she approached but that she did not see the wheel stop because it was not visible contradicted one another. Suzette responds that the challenged findings are supported by substantial evidence, are not contradictory, and the trial court did not need to determine whether North Kitsap complied with the KCC to find in favor of Suzette. We again agree with Suzette.

North Kitsap's remaining challenges to the trial court's findings of fact are untenable largely because the challenged findings are immaterial to the outcome. For example, it is irrelevant whether or not Suzanne "directed" Suzette to visit Paul. The court found that the wheel stop was not visible and was somewhat camouflaged, rendering it unsafe. The trial court found further that the defendants were aware of the hazard and breached its duty to warn Suzette or to make the

wheel stop safer. It does not matter legally in this instance whether or not Suzette was "directed" to Road Rider. And North Kitsap does not explain how this finding, even were we to conclude that substantial evidence did not support it, has any bearing on our determination of the legal issues.

Whether or not North Kitsap complied with the KCC is equally irrelevant because the trial court found that the wheel stop was not clearly visible. Compliance with local county codes could perhaps inform a trial court's decision in a case involving premises liability, but compliance alone does not absolve North Kitsap of the requirement that it warn or correct unsafe conditions of which it is or reasonably should be aware. The parties contested whether or not the code permitted wheel stops in the configuration they were used. But whether or not the wheel stops themselves would be permitted does not preclude the possibility that they can be dangerous by being inadequately maintained or by not being clearly visible to invitees on the premises. And furthermore, North Kitsap does not explain how, even if we agreed that the findings were not supported by substantial evidence, reversal would be required.

Third, the findings that North Kitsap alleges contravene one another do not actually do so. North Kitsap asserts that findings of fact 14 and 23 are contradictory and could lead to different outcomes regarding liability. Those findings provide,

> 14. Suzette Gould was looking at the door of Suite D [Road Rider] as she approached, when she tripped over the wheel stop in front of the door. Her body fell forward into the door and the impact with the front door made a loud noise.
> . . . .
> 23. Suzette Gould's fall was due to tripping over the wheel stop that was not clearly visible and was somewhat camouflaged.

CP at 590-91. But as Suzette recognizes, the fact that the trial court found that she was looking at the door of Road Rider as she approached does not suggest that she would never have noticed a

24

wheel stop or other obstruction that was clearly visible. And again, despite its suggestion that this error has a material effect on the outcome of this dispute, North Kitsap does not explain how this is so. We hold that these arguments fail.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, C.J.

We concur:

WORSWICK, J.

MELNICK, J.