**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE
IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MARCH 18, 2021

_González, C.J._
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MARCH 18, 2021

_Susan L. Carlson_
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | NO. 98056-0 |
| Respondent, | EN BANC |
| v. | Filed: March 18, 2021 |
| NICHOLAS CONAN ORN, | |
| Petitioner. | |

GORDON McCLOUD, J.—Both the federal and state constitutions protect the rights of criminal defendants to present a complete defense and to confront adverse witnesses. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *Davis v. Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973); *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010); *State v. Darden*, 145 Wn.2d 612, 620, 41 P.3d 1189 (2002) (citing *Washington v. Texas*, 388 U.S. 14, 23, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967)). "The primary and most important component" of the confrontation right "is the right to conduct a meaningful cross-examination of

*State v. Orn (Nicholas Conan)*, No. 98056-0

adverse witnesses." *Darden*, 145 Wn.2d at 620 (citing *State v. Foster*, 135 Wn.2d 441, 455-56, 957 P.2d 712 (1998) (plurality opinion)). Cross-examination designed to expose a witness's bias has long been recognized as particularly important because it reveals a "witness' motivation in testifying." *Davis*, 415 U.S. at 316.

In this case, we are asked whether the trial court violated petitioner Nicholas Conan Orn's rights to confrontation and to present a complete defense when it barred him from cross-examining the State's key witness to expose the witness's bias. Orn was charged with attempted first-degree murder after he shot and wounded Thomas Seamans in Kent, Washington in 2016. At trial, Orn sought to cross-examine Seamans on the nature and extent of Seamans's work as a confidential informant for the Kent Police Department (KPD). But the trial court limited Orn's proposed line of cross-examination to a single, misleading question: "[I]sn't it true that . . . you have actually worked with the Kent Police?" 8 Verbatim Report of Proceedings (VRP) (Jan. 16, 2018) at 875. The Court of Appeals affirmed in an unpublished opinion, and we granted review. *State v. Orn*, No. 78089-1-I (Wash. Ct. App. Nov. 18, 2019) (unpublished), http://www.courts.wa.gov/opinions/pdf/780891.pdf, *review granted*, 195 Wn.2d 1018 (2020).

*State v. Orn (Nicholas Conan)*, No. 98056-0

We reiterate our prior decisions holding that highly relevant bias evidence, such as the defense-proffered evidence of Seamans's agreement to work as a confidential informant, is admissible unless the State articulates a compelling interest for excluding it. We further hold that the single question the trial court allowed the defense to ask in this case tended to obfuscate, rather than highlight, any potential bias. As a result, the trial court's decision to exclude all other evidence related to that informant agreement violated constitutional protections and constituted an abuse of discretion. The State, however, has carried its burden of proving beyond a reasonable doubt that this constitutional error was harmless. Orn's challenge to the trial court's jury instruction on the elements of the offense also fails. We therefore affirm.

FACTS

In 2016, Orn lived with his girlfriend, Kimberly Boals, in an apartment complex in Kent. 5 VRP (Jan. 9, 2018) at 360. They were both acquainted with Seamans, who was living in a nearby garage unit in the same complex. 7 VRP (Jan. 11, 2018) at 762, 769. Orn moved out of the apartment after he and Boals broke up in July 2016, but he left some personal property behind. 5 VRP (Jan. 9, 2018) at 367-68. Some of that property ended up in Seamans's garage. *Id.* at 369-71.

3

Orn was upset about this, and over the next few weeks there was conflict between the three individuals as Orn attempted to get his belongings back. *Id.* at 372, 384-85, 449. Boals warned Seamans that Orn was "highly upset," "unstable," and had access to a gun. *Id.* at 448. She testified that the two men conveyed threats to one another through her. *Id.* at 449. Seamans, however, denied having been threatened by Orn directly or through Boals and said that he'd never made any threats, either. 7 VRP (Jan. 11, 2018) at 783.

In any case, around 7:30 p.m. on August 2, 2016, Orn sent a barrage of angry text messages to Boals. 8 VRP (Jan. 16, 2018) at 1025-27. Around 8:30, he arrived at Boals's apartment with a .22 rifle. 5 VRP (Jan. 9, 2018) at 389-90. Orn appeared "angry, irrational, not in a good state of mind," and Orn told Boals that he was going to "go confront Thomas." *Id.* at 390. Orn loaded his gun in the kitchen, and a frightened Boals told Orn she'd call the police if he didn't stop making threats. *Id.* at 390-92. Orn then said "something to the effect of . . . I don't want to hurt you as well . . . don't do that." *Id.* at 392.

Orn left the apartment, went to Seamans's nearby garage, and "yanked open" the garage door. *Id.*; 7 VRP (Jan. 11, 2018) at 784. Inside, Seamans was lying on the couch. 7 VRP (Jan. 11, 2018) at 784. According to Seamans, Orn then opened fire, shooting Seamans in the face, chest, arm, hand, back, and buttock as

4

*State v. Orn (Nicholas Conan)*, No. 98056-0

Seamans ran toward the back of the garage for cover. *Id.* at 787-89; 8 VRP (Jan. 16, 2018) at 982-88.  Orn fired 11 rounds in all. 8 VRP (Jan. 16, 2018) at 943.  Orn returned to Boals's apartment and told her, "I just shot Thomas like 20 times."  5 VRP (Jan. 9, 2018) at 393. Boals ran outside, found the injured Seamans, and had a neighbor call 911. *Id.* at 395. Officers from the KPD arrived shortly after, and Orn was arrested at the scene. *Id.* at 329-34, 497. At trial, his lawyer acknowledged that Orn fired the shots but argued that they were fired in self-defense.

Fortunately, Seamans survived the shooting. Several months later, in December 2016, Seamans was investigated by the Kirkland Police Department for felony theft and identity theft. Supplemental Clerk's Papers (Suppl. CP) at 5. Soon after, the KPD contacted Seamans and made him an offer: if Seamans worked as a confidential informant on two controlled buys of drugs, stolen property, or firearms, his Kirkland felony charges would not be forwarded to the King County Prosecuting Attorney's Office. 2 VRP (Jan. 3, 2018) at 16-17; Suppl. CP at 2-4. Seamans accepted and signed a written agreement. Suppl. CP at 2-4.

PROCEDURAL HISTORY

At Orn's trial, the court granted the State's motion in limine to exclude Seamans's informant agreement and to bar Orn from asking Seamans any questions about the nature and extent of the agreement. Clerk's Papers (CP) at 184;

5

*State v. Orn (Nicholas Conan)*, No. 98056-0

2 VRP (Jan. 3, 2018) at 21. Ultimately, the only question defense counsel was permitted to ask Seamans about the agreement at trial was "[I]sn't it true that since this incident, you have actually worked with Kent Police Department?", to which Seamans responded, "Yes." 8 VRP (Jan. 16, 2018) at 875.

Orn was convicted of attempted murder in the first degree with a firearm enhancement. CP at 135-36. On appeal, he argued that the exclusion of any evidence related to the informant agreement violated his Sixth Amendment rights to present a defense and to cross-examine adverse witnesses, requiring reversal. *Orn*, No. 78089-1-I, slip op. at 13. He also assigned error to the trial court's instruction to the jury on the elements of attempted first-degree murder. *Id.* at 7.

The Court of Appeals affirmed. *Id.* at 1. It rejected Orn's jury instruction argument. *Id.* at 10. And it rejected Orn's Sixth Amendment claims using deferential abuse-of-discretion review. *Id.* at 20-21. The appellate court characterized the issue as solely a question of admissibility of bad character evidence; hence it failed to separately analyze whether the evidence was relevant or admissible, under the constitution, to show bias. *Id.* Orn petitioned for review, which we granted without limitation.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Orn (Nicholas Conan)*, No. 98056-0

STANDARD OF REVIEW

We review de novo whether the trial court's evidentiary rulings abridged a defendant's Sixth Amendment rights. *State v. Arndt*, 194 Wn.2d 784, 797, 453 P.3d 696 (2019) (citing *Jones*, 168 Wn.2d at 719); *State v. Clark*, 187 Wn.2d 641, 648-49, 389 P.3d 462 (2017); *State v. Iniguez*, 167 Wn.2d 273, 280-81, 217 P.3d 768 (2009). If a claim is raised under the Evidence Rules (ER), we review that for abuse of discretion. *Arndt*, 194 Wn.2d at 797 (citing *State v. Yates*, 161 Wn.2d 714, 762, 168 P.3d 359 (2007)). No such ER claim was raised in this case; even if one had been, "An abuse of discretion is found if the trial court . . . applies the wrong legal standard[] or bases its ruling on an erroneous view of the law,"[1] so a court "'necessarily abuses its discretion by denying a criminal defendant's constitutional rights.'"[2]

We review de novo a challenged jury instruction. *State v. DeRyke*, 149 Wn.2d 906, 910, 73 P.3d 1000 (2003) (citing *State v. Pirtle*, 127 Wn.2d 628, 656, 904 P.2d 245 (1995)).

---

[1] *State v. Lord*, 161 Wn.2d 276, 284, 165 P.3d 1251 (2007) (citing *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006)).

[2] *Iniguez*, 167 Wn.2d at 280 (quoting *State v. Perez*, 137 Wn. App. 97, 105, 151 P.3d 249 (2007)).

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Orn (Nicholas Conan)*, No. 98056-0

ANALYSIS

I.    A trial court violates a defendant's Sixth Amendment rights when it effectively hides the fact that the prosecution's key witness worked as a confidential informant for the same police department that investigated the case

Seamans was the State's key witness and the only testifying eyewitness to the shooting. Orn sought to cross-examine Seamans to expose the clear possibility that Seamans was motivated to testify in order to curry favor with the police department and the prosecutor's office holding the power to prosecute him—the same police department and prosecutor's office that were involved in Orn's case. The trial court acknowledged the relevance of this evidence but excluded nearly all of it by implied reference to ER 403, determining that the evidence's probative value was substantially outweighed by unfair prejudice or confusion of issues.  It specifically refused to permit "any questioning regarding the agreement itself or the nature of the agreement or the case." 2 VRP (Jan. 3, 2018) at 21. The court proceeded to limit cross-examination on the topic to a single, misleading question. *Id.* at 21-22.

But the right to present evidence of a witness's bias is essential to the fundamental constitutional right of a criminal defendant to present a complete defense, which encompasses the right to confront and cross-examine adverse witnesses. *Davis*, 415 U.S. at 316; *Chambers*, 410 U.S. at 294; *Jones*, 168 Wn.2d

8

*State v. Orn (Nicholas Conan)*, No. 98056-0

at 720; *Darden*, 145 Wn.2d at 620 (citing *Washington*, 388 U.S. at 23). The right to cross-examine for bias is especially important where, as here, that bias stems from a witness's motive to cooperate with the State based on the possibility of leniency or the desire to avoid prosecution. *Delaware v. Van Arsdall*, 475 U.S. 673, 677, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986). Orn's right to present a defense was violated by the single, misleading question, combined with the exclusion of other proffered evidence on this topic.

We stress, however, that if the single question allowed was not misleading, this case would be much more difficult. Neither the right to confront nor the right to present a defense are without limitation. *Darden*, 145 Wn.2d at 621; *Jones*, 168 Wn.2d at 720. For example, a defendant has no right to present irrelevant evidence. *State v. Hudlow*, 99 Wn.2d 1, 15, 659 P.2d 514 (1983) (citing *Washington*, 388 U.S. at 16). And "the Constitution permits judges 'to exclude evidence that is "repetitive . . . only marginally relevant" or poses an undue risk of "harassment, prejudice, [or] confusion of the issues."'" *Holmes v. South Carolina*, 547 U.S. 319, 326-27, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006) (alterations in original) (quoting *Crane v. Kentucky*, 476 U.S. 683, 689-90, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986) (quoting *Van Arsdall*, 475 U.S. at 679)). Washington's ER 403 serves just such a permissible purpose, allowing exclusion of relevant evidence if, inter alia, "its

9

probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

If, on de novo review, we determined as a matter of law that the question had not been misleading and that the excluded evidence was not critically important, then the court's decision to admit or exclude the evidence should have been subject to the normal abuse of discretion standard applied to a trial judge's evidentiary decisions under ER 403 and ER 404(b). *See Hudlow*, 99 Wn.2d at 22 ("[s]ince the scope of such cross-examination is within the discretion of the trial court and is to be disturbed only upon abuse of discretion" (citing *State v. Krausse*, 10 Wn. App. 574, 577, 519 P.2d 266 (1974)). *Hudlow* considered whether the defendant's right to present a defense was violated by the trial court's application of the rape shield statute to exclude evidence of the victims' prior sexual history. *Id.* at 3. The test we articulated in *Hudlow* asks (1) whether the excluded evidence was at least minimally relevant, (2) whether the evidence was "so prejudicial as to disrupt the fairness of the factfinding process at trial," and, if so, (3) whether the State's interest in excluding the prejudicial evidence outweighs the defendant's need to present it. *Id.* at 15. *Hudlow* did not specify the standard of review that we applied to each of those three factors. A trial court's rulings on relevance and prejudice, however, are generally reviewed for abuse of discretion, while a trial

court's rulings on Sixth Amendment claims are generally reviewed de novo. Even under the abuse of discretion standard, the trial court erred in barring Orn from cross-examining Seamans on the nature and extent of the confidential informant agreement to expose possible bias.

### A. *Evidence of Seamans's bias was far more than minimally relevant*

A witness's bias is "'always relevant as discrediting the witness and affecting the weight of his testimony.'" *Davis*, 415 U.S. at 316 (quoting 3A JOHN HENRY WIGMORE, EVIDENCE § 940, at 775 (Chadbourn rev. ed. 1970)). And "the more essential the witness is to the prosecution's case, the more latitude the defense should be given to explore fundamental elements such as motive, bias, [or] credibility." *Darden*, 145 Wn.2d at 619.

Here, Seamans was just such an "essential" witness in the State's case. Orn did not testify. Thus, as the only testifying eyewitness to the shooting, Seamans was the only witness providing direct evidence of Orn's actions and expressions of intent within the garage, and the only source of evidence about his own response when Orn entered. 7 VRP (Jan. 11, 2018) at 784. Thus, Seamans's credibility was critical to the State's ability to prove that Orn premeditated and did not act in self-defense—meaning that as an initial matter, Orn should have had wide latitude to explore Seamans's bias and motivation to testify. *Darden*, 145 Wn.2d at 619.

*State v. Orn (Nicholas Conan)*, No. 98056-0

Evidence of bias is particularly probative of a witness's credibility when it stems from a witness's motive to cooperate with the State based on the possibility of leniency or the desire to avoid prosecution. *See, e.g.*, *Van Arsdall*, 475 U.S. at 679; *Davis*, 415 U.S. at 318; *State v. Portnoy*, 43 Wn. App. 455, 461, 718 P.2d 805 (1986) (quoting *State v. Brooks*, 25 Wn. App. 550, 551-52, 611 P.2d 1274 (1980)); *see also Giglio v. United States*, 405 U.S. 150, 154-55, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972). Such evidence serves as a "more particular attack on the witness' credibility" because it exposes a witness's motivation in testifying. *Davis*, 415 U.S. at 316. And "[t]he right of cross-examination allows more than the asking of general questions concerning bias; it guarantees an opportunity to show *specific reasons why* a witness might be biased in a particular case." *Brooks*, 25 Wn. App. at 551-52 (emphasis added) (citing *Davis*, 415 U.S. 308); *see also State v. Fisher*, 165 Wn.2d 727, 753, 202 P.3d 937 (2009); *State v. Robbins*, 35 Wn.2d 389, 396, 213 P.2d 310 (1950).

Here, Orn was not permitted to ask Seamans *any* questions about the nature of his work for the KPD that would elicit the specific reasons why Seamans might have been biased. The single, vague question permitted—"[I]sn't it true that since this incident, you have actually worked with Kent Police Department?"—could not apprise the jury of those specific reasons. And in fact, this question is affirmatively

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

misleading—a reasonable listener would not likely interpret "worked with" to indicate "worked as a confidential informant to avoid being charged himself." But the bias that an informant working off charges has to curry favor with the police and prosecutor's office holding the power to prosecute him is qualitatively different than the potential bias of a regular employee of the police. Seamans's desire to avoid prosecution clearly could have "furnished [Seamans with] a motive for favoring the prosecution in his testimony." *Van Arsdall*, 475 U.S. at 679. His status as an informant at the time of Orn's trial was highly relevant to his bias and easily satisfied *Hudlow*'s minimal relevance requirement.

### B. *The evidence was not unfairly prejudicial*

Because the evidence of Seamans's potential bias far exceeded *Hudlow*'s threshold of minimal relevance, it could not be excluded unless the State showed "a compelling interest to exclude prejudicial or inflammatory evidence." *Darden*, 145 Wn.2d at 621 (citing *Hudlow*, 99 Wn.2d at 16). To justify exclusion, the State must show that the evidence is "so prejudicial as to disrupt the fairness of the factfinding process." *Hudlow*, 99 Wn.2d at 15.

The State did not make that showing here. It argued that admitting evidence of the informant agreement would "disparag[e]" the KPD and King County prosecutor by implying that they would give Seamans "some kind of backdoor

13

*State v. Orn (Nicholas Conan)*, No. 98056-0

favor if he testified favorably" for them. 2 VRP (Jan. 3, 2018) at 18. Assuming this

were true, the State still did not articulate how "disparaging" the state entities

responsible for investigating and prosecuting Seamans would create *unfair*

*prejudice* rather than reveal true risks to taking Seamans's word at face value. *See*

*Wilson v. Olivetti N. Am., Inc.*, 85 Wn. App. 804, 814, 934 P.2d 1231 (1997)

(prejudice is unfair "only if it has the capacity to skew the truth-finding process"

(citing *Hudlow*, 99 Wn.2d at 12-13)). Nothing about the nature of the excluded

evidence suggests that it would inflame the jury or influence jurors' ability to make

a rational decision. *Lockwood v. AC&S, Inc.*, 109 Wn.2d 235, 257, 744 P.2d 605

(1987) (unfair prejudice prototypically results when jury is presented with

"evidence that is more likely to cause an emotional response than a rational

decision" (citing 5 KARL B. TEGLAND, WASHINGTON PRACTICE:  WASHINGTON

EVIDENCE LAW AND PRACTICE § 106, at 249-50 (2d ed. 1982))). Instead, this was

classic bias evidence of the type at issue in *Davis* and *Van Arsdall*.

### C. Even if the State could show the evidence was unfairly prejudicial, its interest in excluding it is outweighed by Orn's need for it

Because the State cannot show that the evidence was unfairly prejudicial, the

inquiry should end here under the *Hudlow* analysis. But even if the State could

show such prejudice, Orn's need to present the evidence outweighed it: Seamans

14

*State v. Orn (Nicholas Conan)*, No. 98056-0

was a key prosecution witness and the only testifying eyewitness to the crime, making his motive and credibility crucially important.

The State argues that Orn was still able to impeach Seamans's credibility by cross-examining Seamans on prior inconsistent statements, and that Boals's testimony portraying Seamans as dishonest further damaged his credibility. Suppl. Br. of Resp't at 22. This testimony certainly may have cast some doubt on Seamans's credibility. But the error in excluding evidence relating to the agreement was specifically because it showed Seamans's bias—not just that it damaged his credibility generally. *See Davis*, 415 U.S. at 311.

The State also asserted interests in preventing interference with ongoing investigations, retaining police's ability to use informants in the future, and protecting Seamans's safety. 2 VRP (Jan. 3, 2018) at 19. To the extent that these asserted interests are grounded in "the public need for effective law enforcement" rather than a state interest in "precluding evidence" that may interfere with fairness of trial, our analysis should be governed by the rule we set forth in *Darden*. 145 Wn.2d at 622, 626. But the State cannot prevail under that rule, either.

In *Darden*, the defendant sought to cross-examine a police officer on the precise location of a secret surveillance post. The State's proffered justification for excluding this line of questioning was a general safety concern for the owners of

15

the premises used as a surveillance post. *Id*. We held that the *Hudlow* test does not apply when the State asserts an interest stemming from "the public need for effective law enforcement" rather than from an interest in excluding prejudicial evidence. *Id*. at 622. But we applied an analysis similar to the one used in *Hudlow*, anyway: we determined that establishing the surveillance post's location was relevant to the defense and that the State had not provided "a lawful justification to withhold that evidence." *Id*. at 625 (citing ER 403). Thus, we held that the "defendant's confrontation right to challenge the accuracy and veracity of a key witness for the State triumphs over the State's asserted interest to not reveal the precise location of an observation post." *Id*. at 615.

The State's justification fails for similar reasons here. Just as in *Darden*, the State here has not offered a sufficient "lawful justification" to exclude the defense-proffered evidence because it failed to show that its interest in exclusion outweighs Orn's interest in testing Seamans's bias. The State argued that because the investigations involving Seamans as an informant were ongoing, allowing testimony on the nature and extent of Seamans's agreement would undermine police ability to use informant agreements generally. 2 VRP (Jan. 3, 2018) at 19. But this generic concern with the efficacy of a law enforcement tool is even more attenuated than the argument we rejected in *Darden*—and, as in *Darden*, such

16

generic concerns provide "no ground to prevent relevant cross-examination of the State's key witness." 145 Wn.2d at 626. And while Orn sought to question Seamans on the nature of the agreement, he did not seek to elicit details regarding any specific ongoing investigation. 2 VRP (Jan. 3, 2018) at 21.

Finally, the State's asserted interest in protecting Seamans's identity is not persuasive, since his identity had already been revealed in open court. *Id.* at 19; *see Roviaro v. United States*, 353 U.S. 53, 60, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957).

We therefore agree with Orn that even under an abuse of discretion standard, his need to present this evidence outweighed any purported state interest in excluding it. *See State v. Ahlfinger*, 50 Wn. App. 466, 475 n.4, 749 P.2d 190 (1988) ("Clearly, the State's interest in keeping information about plea bargains or offers of leniency from the jury is outweighed by the defendant's right to confront the witnesses and alert the jury to their potential bias."). The trial court's limitation of cross-examination to the misleading question whether Seamans had "worked with" the KPD denied Orn his rights to confrontation and to present a defense.[3]

---

[3] The error was compounded when the trial court later denied Orn's renewed request to cross-examine Seamans about the agreement, this time after Seamans improperly bolstered his good character on direct examination. In response to the prosecutor's request that Seamans say "a little bit about [him]self," Seamans replied that he was "a proactive pothead," explaining, "I work hard every day, I visit my family, and I . . . just stay proactive in not doing anything out of the question really." 7 VRP (Jan. 11, 2018) at 760. Orn argued that Seamans's assertion that he does not "do[] anything out of the question" opened the door to cross-examination on the informant agreement and the

*State v. Orn (Nicholas Conan)*, No. 98056-0

Because the trial court excluded evidence in violation of Orn's constitutional rights, the exclusion also constitutes an abuse of discretion in applying ER 403. *Iniguez*, 167 Wn.2d at 280-81.

II. The trial court's error was harmless beyond a reasonable doubt

Violations of the rights to present a defense and to confront adverse witnesses at trial are subject to constitutional harmless error review. *State v. Romero-Ochoa*, 193 Wn.2d 341, 347, 440 P.3d 994 (2019) (citing *Van Arsdall*, 475 U.S. at 684; *State v. Lui*, 179 Wn.2d 457, 495, 315 P.3d 493 (2014); *Jones*, 168 Wn.2d at 724), *cert. denied*, 141 S. Ct. 398 (2020). "An error is harmless and not grounds for reversal if the appellate court is assured [by the State] beyond a reasonable doubt that the jury would have reached the same verdict without the error." *Id.* (citing *Lui*, 179 Wn.2d at 495; *Jones*, 168 Wn.2d at 724; *Van Arsdall*, 475 U.S. at 684). Where impeachment evidence has been erroneously excluded, "'[t]he correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, [we can]

---

charged crimes leading up to it. *Id.* at 819-21; *see State v. Stockton*, 91 Wn. App. 35, 40 & n.3, 955 P.2d 805 (1998) (trial court may admit otherwise inadmissible evidence on cross-examination "if the witness 'opens the door' during direct examination and the evidence is relevant to some issue at trial"). Seamans's testimony violated ER 608(a)—which generally bars a witness from testifying about his good character using specific instances of conduct on direct examination—and thus increased the need for, and relevance of, counterbalancing impeachment evidence. *See State v. Lord*, 117 Wn.2d 829, 892-94, 822 P.2d 177 (1991); *State v. Gefeller*, 76 Wn.2d 449, 455, 458 P.2d 17 (1969).

nonetheless say that the error was harmless beyond a reasonable doubt.'" *Id*. at 348

(alterations in original) (quoting *Van Arsdall*, 475 U.S. at 684). To that end, we

must "find the error harmless if, in light of the entire trial record, we are convinced

that the jury would have reached the same verdict absent the error." *Id*. We

consider factors including "the properly admitted direct and circumstantial

evidence . . . and the overall significance of the erroneously admitted or excluded

evidence in this context (e.g., whether it was cumulative or corroborated, or

consistent with the defense theory)." *Id*. (citing *Van Arsdall*, 475 U.S. at 684).

Here, the "damaging potential" of the prohibited cross-examination was its

potential to cast Seamans's entire testimony in a different light by revealing a self-

interested motive to fabricate or exaggerate. *Van Arsdall*, 475 U.S. at 684. But

even if the damaging potential of the proposed cross-examination had been

realized—indeed, even had Seamans not testified at all—we are convinced, based

on the entire record, that the jury would have reached the same verdict.

Uncontradicted evidence linked Orn to the shooting. Orn owned a .22 caliber

long rifle. 5 VRP (Jan. 9, 2018) at 375. Orn confessed to Boals immediately after

the shooting. *Id*. at 393. A short time thereafter, police arrested Orn in front of

Boals's apartment; inside, they found a 10/22 .22 long rifle and a Butler Creek

extended magazine capable of holding 25 cartridges. 3 VRP (Jan. 8, 2018) at 97; 6

VRP (Jan. 10, 2018) at 690-92. Orn's DNA (deoxyribonucleic acid) was on the rifle. 8 VRP (Jan. 16, 2018) at 910. The rifle had one cartridge in the chamber; the magazine contained 13 cartridges. 6 VRP (Jan. 10, 2018) at 704. Eleven empty shell casings were found inside Seamans's garage. *Id.* at 747.

Because Orn did not testify, we have no direct evidence of his mental state at the time of the shooting. But uncontradicted evidence established premeditation. One to two hours before the shooting, Orn sent Boals multiple text messages expressing his anger at her and Seamans—among them, "I hope . . . [you're] gone when I come back there. I don't want to hurt you, too," "Honestly, I feel like going on a fucking rampage right now," and concluding with "I don't even need time to make a decision at this point. I'm certain as to what I'm going to do." 8 VRP (Jan. 16, 2018) at 1025-27. And after arriving at Boals's apartment that night, Orn expressed to Boals that he was going to "threaten and/or shoot" Seamans while, or shortly after, loading his gun. 5 VRP (Jan. 9, 2018) at 390-91. Thus, the jury was able to consider Orn's state of mind right before his entry into the garage along with his confession afterward.

There were some small utility knives on shelves in Seamans's garage, along with a heavy crowbar, but none of these items were taken into evidence because they did not appear to have been used in the altercation, thus corroborating

Seamans's testimony that he did not provoke Orn. 7 VRP (Jan. 11, 2018) at 782, 827; 8 VRP (Jan. 16, 2018) at 991. Finally, the number of shots fired—11—and the extent of Seamans's wounds also corroborate Seamans's testimony that Orn was not acting in self-defense. 6 VRP (Jan. 10, 2018) at 747; 8 VRP (Jan. 16, 2018) at 943; *see, e.g.*, *State v. Asaeli*, 150 Wn. App. 543, 598, 208 P.3d 1136 (2009) (an "excessively forceful response to [a] perceived threat" may provide a basis for jury to reject defendant's claim of self-defense); *State v. Brigham*, 52 Wn. App. 208, 210, 758 P.2d 559 (1988) (trial court properly declined to give self-defense instruction where defendant stabbed victim eight times in the back; this "was excessive force as a matter of law under the circumstances, and could not be successfully interjected as self-defense"). We therefore hold that while the trial court's exclusion of the above-discussed bias evidence was error, it was harmless beyond a reasonable doubt in light of the entire record.

III. The challenged jury instruction was correct under our controlling decisions

Orn raises a second issue: whether the to-convict jury instruction on attempted first-degree murder relieved the State of its burden to prove that he acted with premeditation. We hold that it did not.

Jury instructions satisfy due process "when, taken as a whole, they properly inform the jury of the applicable law, are not misleading, and permit the defendant

*State v. Orn (Nicholas Conan)*, No. 98056-0

to argue his theory of the case." *State v. Tili*, 139 Wn.2d 107, 126, 985 P.2d 365 (1999) (citing *State v. Theroff*, 95 Wn.2d 385, 389, 622 P.2d 1240 (1980)). When the trial court gives a to-convict instruction, that instruction must "contain all of the elements of the crime because it serves as a 'yardstick' by which the jury measures the evidence to determine guilt or innocence." *State v. Smith*, 131 Wn.2d 258, 263, 930 P.2d 917 (1997) (quoting *State v. Emmanuel*, 42 Wn.2d 799, 819, 259 P.2d 845 (1953)).

The statutory crime of attempt "contains two essential elements the State has to prove to secure a conviction: (1) intent to commit a specific crime and (2) any act constituting a substantial step toward the commission of that crime." *State v. Nelson*, 191 Wn.2d 61, 71, 419 P.3d 410 (2018) (citing *State v. Aumick*, 126 Wn.2d 422, 429, 894 P.2d 1325 (1995)); RCW 9A.28.020. Therefore, while a to-convict instruction for an attempt crime must contain these essential elements, it need not also set out the elements of the substantive crime attempted. *DeRyke*, 149 Wn.2d at 911; *Nelson*, 191 Wn.2d at 72. Instead, the elements of the substantive crime attempted may be contained in a separate, definitional jury instruction. *DeRyke*, 149 Wn.2d at 911.

*State v. Orn (Nicholas Conan)*, No. 98056-0

That is exactly what happened here. The State proposed the following

instruction for attempted first-degree murder based on the WPICs[4]:

> To convict the defendant of the crime of attempted murder in the first
> degree . . . each of the following elements of the crime must be proved
> beyond a reasonable doubt:
> (1) That on or about August 2, 2016, the defendant did an act that was
> a substantial step toward the commission of murder in the first degree;
> (2) That the act was done with the intent to commit murder in the first
> degree; and
> (3) That the act occurred in the State of Washington.

CP at 68. Orn requested that the second element be altered to read, "[That] the act

was done with the *premeditated* intent to commit murder in the first degree." 10

VRP (Jan. 18, 2018) at 1116 (emphasis added). The court denied Orn's request,

explaining that this would be "redundant" because "the definition of [first-degree]

murder includes premeditation." *Id*. A separate instruction defined first-degree

murder as follows:

> A person commits the crime of murder in the first degree when, with a
> premeditated intent to cause the death of another person, he or she causes the
> death of such person unless the killing is justifiable.

CP at 71.[5] Thus, as the Court of Appeals explained, the jury could not have

convicted Orn of attempted first degree murder without finding that he took a

---

[4] 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 100.02, at 434 (4th ed. 2016) (WPIC).

[5] The trial court gave separate instructions on premeditation, intent, and substantial step, also following the WPICs. CP at 69-72.

substantial step toward committing first-degree murder with the premeditated intent to cause the death of another. *Orn*, No. 78089-1-I, slip op. at 13. The to-convict instruction did not omit any essential element of the crime of attempt, and "taken as a whole," the jury instructions "properly inform[ed] the jury of the applicable law." *Tili*, 139 Wn.2d at 126 (citing *Theroff*, 95 Wn.2d at 389). There was no error.

CONCLUSION

We hold that the trial court's decision to exclude defense-proffered bias evidence was both an abuse of discretion and a violation of Orn's constitutional rights to present a defense and to confront and cross-examine witnesses. However, after a careful examination of the entire record, we hold that the State carried its burden of proving that the error was harmless beyond a reasonable doubt. And the trial court's instruction to the jury on the elements of attempted murder complied with our cases and with constitutional requirements.

We therefore affirm the Court of Appeals, but on different grounds.

*State v. Orn (Nicholas Conan)*, No. 98056-0

Gordon McCloud, J.

Gonz´alez, C.J.

Stephens, J.

Johnson, J.

Yu, J.

Madsen, J.

Montoya-Lewis, J.

Owens, J.

Whitener, J.