# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 55571-9-II |
| Respondent, | |
| v. | |
| H.A., | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — H.A. appeals her adjudication for two counts of third degree rape. H.A. argues that the juvenile court erred and violated her constitutional right to present a defense by excluding evidence about the victim previously sending to a third party nude photos and a sexual video based on the rape shield statute. Assuming without deciding the rape shield statute applies, we hold that the juvenile court erred by excluding the evidence under this statute, but the error was harmless, and the court did not violate H.A.'s constitutional right to present a defense. Accordingly, we affirm H.A.'s adjudication.

## FACTS

The State charged H.A. in juvenile court with two counts of third degree rape. The amended information alleged that H.A., a minor, engaged in sexual intercourse with N.B., another minor, without N.B.'s consent. H.A.'s charges were heard at a bench trial.

A.     EXCLUSION OF TESTIMONY ABOUT PRIOR INCIDENT WITH PHOTOS AND VIDEO

Prior to trial, the State moved to exclude any mention of N.B.'s past sexual acts or behavior. H.A. filed a trial brief stating that the defense had no intention of offering evidence of N.B.'s past sexual behavior "either for the purpose of impeaching her credibility or for the purpose of proving her consent." Clerk's Papers (CP) at 28. However, the defense stated that it intended to offer evidence that N.B.'s parents were aware of previous rumors about N.B.'s sexual behavior that had been circulating around her school. Specifically, these rumors were that N.B. had sent a boy some nude photos and a video of herself masturbating. N.B.'s parents became aware of the photos and video as a result of the middle school rumor mill when the school administration became aware of the rumors and notified N.B.'s parents. After learning about the photos and video, N.B.'s parents warned her about her behavior and took away her phone.

The defense sought to offer this evidence to show that N.B. was concerned about "getting out in front of any such rumors" about her encounter with H.A, which provided N.B. with a "motive to fabricate the allegation of rape." CP at 28. The defense argued that whether or not the rumors were true was entirely irrelevant. And the defense stated that they would not use the evidence "for the purpose of impeaching [N.B.'s] credibility" or "for the purpose of proving [N.B.] consented to sexual acts with [H.A.]." CP at 28. The trial court did not rule on the motion before trial.

During trial, H.A.'s attorney asked the juvenile court if it was going to allow cross-examination about the photos and video or if the testimony would be excluded. H.A.'s attorney again argued that they were not offering the testimony as evidence of consent but "as evidence of [N.B.'s] understanding that this sort of conduct is resulting in discipline from her family." 1

Verbatim Report of Proceedings (VRP) (Nov. 12, 2020) at 99. Specifically, the defense planned to argue that N.B. alleged rape days after the incidents because her family would discipline her if they found out about the incidents in the same way they did with the photos and video incident.

The prosecutor objected, arguing that the evidence should be excluded under the rape shield statute and ER 404(b). The prosecutor cited to the purpose of the rape shield statute, which is to prevent prejudice arising from promiscuity. The prosecutor argued that the defense was "asking to embarrass the victim," which would violate the rape shield statute. 1 VRP (Nov. 12, 2020) at 103. The prosecutor also argued that the evidence was not relevant.

The juvenile court excluded the testimony based on the rape shield statute. The court stated that, while H.A. had the right to present her theory of the case, she did not "have the right to do it at the expense of the alleged victim and the kind of behaviors that the rape shield statute . . . was designed to prevent." 1 VRP (Nov. 12, 2020) at 105.

B.    TRIAL

1.    Witness Testimony

As relevant to this appeal, witnesses testified as follows.

H.A. and I.A. spent the night at N.B.'s house. H.A. acted flirty with N.B. and touched N.B.'s arm and bottom. I.A. became uncomfortable with seeing N.B. and H.A. interacting on the bed, so I.A. went to the bathroom. When I.A. went to the bathroom, H.A. digitally raped N.B. When I.A. came back from the bathroom, N.B. and H.A. looked sweaty and had messed-up hair, and N.B. looked "'a little bit grossed out.'" CP at 70.

Later in the evening, H.A. and N.B. were on the bed cuddling while I.A. sat on the floor watching a movie. H.A. and N.B. were under the covers, and I.A. heard N.B. say "'[o]uch'" and

"'[s]top.'" CP at 71. H.A. appeared to be on top of N.B., and H.A.'s head moved down. I.A. saw N.B. push H.A. off of N.B., and N.B. appeared to be very upset. N.B. did not ask H.A. to have sex with her and said "'no'" and "'ouch'" several times. CP at 71. H.A. did not stop touching her when she said "'no'" and "'ouch'" and only stopped touching her when I.A. stood up. CP at 71.

N.B. quickly went to the bathroom. N.B. returned from the bathroom upset and crying and told I.A. that H.A. had raped her.

When N.B. told I.A. that H.A. had raped her, H.A. was in the bathroom. After H.A. returned from the bathroom, the three girls did not really talk. I.A. and N.B. waited for H.A. to fall asleep then went downstairs to sleep. N.B. testified that she talked with I.A. "about what [H.A.] did" to her for approximately three or four hours. 2 VRP (Dec. 12, 2020) at 57. I.A. heard N.B. use her phone to talk about the incident with other individuals. In the morning, H.A. and I.A. left N.B.'s house.

During the week after the incident, N.B. complained each morning that she did not feel well and did not want to go to school. N.B. went to school anyway, and people at school asked N.B. about the incident with H.A.

On Wednesday, N.B. was upset and crying, and she told her mother about the incident with H.A. N.B. also told her mother that people at school were talking about the incident. N.B's mother asked if she wanted to call the police, and N.B. said yes.

N.B.'s mother testified that she is religious and N.B. knows she disapproves of homosexuality. N.B.'s mother also testified that the school had previously notified her about prior incidents involving her daughter and that N.B. was aware of that.

N.B. testified that she would get in trouble with her parents for having sexual contact with anyone. N.B. also testified that it did not cross her mind that her mother would hear about the incident from the school.

### 2. Closing Argument

In closing argument, defense counsel argued that N.B. knew her parents would find out exactly what happened. Defense counsel also argued that N.B.'s parents had views that homosexuality is not acceptable, and those views were clear to N.B. Defense counsel further argued that "[n]o sexual contact, whether from a boy or a girl, was acceptable to [N.B.'s] parents." 2 VRP (Dec. 12, 2020) at 175. Defense counsel continued:

> Well, how in the world is [N.B.] going to explain to her mom . . . she's having sexual contact with another girl? Her only explanation was "I didn't consent to that." Because if she did, it goes against everything her parents had told her, and she understood that.

2 VRP (Dec. 12, 2020) at 175-76.

### C. VERDICT

The juvenile court found H.A. guilty of both counts of third degree rape. In its oral ruling, the court stated:

> It was argued that [N.B.] made up the allegations because of rumors going around school and her fear of getting in trouble at home and that she made up a claim of rape because her parents are religious and that she didn't want to get in trouble for . . . having sex with another girl, and again, that also doesn't make sense given the testimony here. [N.B.] and [I.A.] communicated almost in real time about what was happening that evening, and both [N.B.] and [I.A.] testified credibly that when [N.B.] went to the bathroom immediately after the first instance she was very upset. [N.B.] did this, again, basically in real time. It wasn't something that she did later after she had gone back to school.

VRP (Dec. 16, 2020) (Ruling) at 18-19. In its written findings of fact and conclusions of law, the juvenile court found N.B.'s testimony credible and I.A.'s testimony "very credible." CP at 68. With regard to the issue of N.B. making up allegations of rape because of her fear of getting in trouble with her parents, the court found that

> the argument that [N.B.] made up the allegations because of rumors going around school and her fear of getting in trouble at home because her parents are religious and she didn't want to get in trouble for . . . having sex with another girl does not make sense given the testimony. . . .[N.B.] and [I.A.] were communicating almost in real time about what was happening the evening of [the incidents].

CP at 72.

H.A. appeals.

## ANALYSIS

H.A. argues that the juvenile court erred by improperly excluding evidence about N.B.'s photos and video under the rape shield statute, thereby violating H.A.'s right to present a defense. We hold that, assuming the rape shield statute applies, the juvenile court erred in excluding the evidence under the rape shield statute, but the evidentiary error was harmless, and the court did not violate H.A.'s Sixth Amendment right to present a defense.

A. STANDARD OF REVIEW AND LEGAL PRINCIPLES

When reviewing a trial court's discretionary evidentiary ruling that potentially implicates the Sixth Amendment right to present a defense, we use a "two-step review process." *State v. Arndt*, 194 Wn.2d 784, 797, 453 P.3d 696 (2019), *cert. denied*, 142 S. Ct. 726 (2021). First, we review the evidentiary ruling for an abuse of discretion, then we consider de novo the constitutional question of whether the ruling deprived the defendant of their right to present a defense. *State v. Jennings*, 199 Wn.2d 53, 58, 502 P.3d 1255 (2022); *Arndt*, 194 Wn.2d at 797. A trial court abuses

its discretion when its decision is based on untenable grounds or reasons, such as a misunderstanding of the law. *State v. Enriquez-Martinez*, 198 Wn.2d 98, 101, 492 P.3d 162 (2021).

The rape shield statute bars the admission of evidence of a victim's past sexual behavior to prove credibility or consent. RCW 9A.44.020(2). Past sexual behavior includes but is "not limited to the victim's marital history, divorce history, or general reputation for promiscuity, nonchastity, or sexual mores contrary to community standards." RCW 9A.44.020(2). "The purpose of the rape shield statute is to prevent prejudice arising from promiscuity and by suggesting a 'logical nexus between chastity and veracity.'" *State v. Sheets*, 128 Wn. App. 149, 155, 115 P.3d 1004 (2005) (quoting *State v. Peterson*, 35 Wn. App. 481, 485, 667 P.2d 645, *review denied*, 100 Wn.2d 1028 (1983)), *review denied*, 156 Wn.2d 1014 (2006).

Before the enactment of the rape shield statute, defense counsel was allowed great latitude in cross-examining a victim relative to motive or credibility. *State v. Price*, 17 Wn. App. 247, 249, 562 P.2d 256 (1977). The rape shield statute bars cross-examination as to the victim's past sexual behavior on the issue of credibility, but "[c]ross-examination as to the victim's past sexual behavior as it may relate to motivation is still allowed." *Id.*

B.    EXCLUSION OF EVIDENCE AND HARMLESS ERROR

H.A. argues that the juvenile court abused its discretion by excluding evidence about N.B.'s nude photos and video under the rape shield statute. Assuming without deciding that the rape

shield statute applies, the juvenile court erred in excluding the evidence under the rape shield statute,[1] but any error in excluding the evidence was harmless.

### 1. Exclusion Under Rape Shield Statute

Here, H.A. intended to introduce evidence that N.B. had previously gotten into trouble for sending a boy nude photos and a video of herself masturbating. H.A. sought to introduce this evidence to show that N.B. had been in trouble with her parents in the past for sexual behavior, thereby showing that N.B. had a motive for saying the sexual contact with H.A. was nonconsensual. Because H.A. sought to introduce evidence of N.B.'s past sexual behavior to show N.B.'s motivation for lying, the rape shield statute was an improper reason to exclude evidence about N.B's photos and video. *See Price*, 17 Wn. App. at 249. Therefore, the trial court abused its discretion by basing its decision to exclude the evidence on the rape shield statute, which was untenable grounds.

### 2. Harmless Error

As discussed below, we hold that the exclusion of the evidence did not violate H.A.'s right to present a defense; therefore, we apply the nonconstitutional harmless error standard to determine whether a trial court's evidentiary error was harmless. *State v. Barry*, 183 Wn.2d 297, 303, 352 P.3d 161 (2015). Under this standard, a defendant must show a reasonable probability that, absent the error, the outcome of the trial would have been materially affected. *Id.* at 317-18.

---

[1] The juvenile court excluded the evidence based on the rape shield statute and H.A. only argues that the rape shield statute does not apply because the evidence was admissible to show motive to fabricate. Thus, we review the trial court's ruling based only on the rape shield statute. However, we note that the undue prejudice of the evidence clearly outweighs any probative value of the proffered evidence. *See* ER 403.

Here, the nude photos and sexual video related to H.A.'s argument that N.B. had a motive to lie to her parents about consenting to sexual contact with H.A. once rumors about the incident started circulating at school. But N.B. told I.A. that H.A. had raped her shortly after the sexual contact occurred, before any rumors could have circulated around the school. N.B. also spoke with I.A. "about what H.A. did" to her when they went downstairs to sleep that night. 2 VRP (Dec. 12, 2020) at 57. And I.A. heard N.B. use her phone to talk about the incident with other individuals while they were downstairs.

In its oral ruling and written findings, the trial court identified this discrepancy and found that H.A.'s argument that N.B later made up the allegations did not make sense given that N.B. and I.A. communicated almost in real time about what was happening that evening. Even if N.B. had a strong motive to lie to her parents after rumors started circulating, this motivation would not explain N.B.'s statements to I.A., a peer, on the night of the incidents. Therefore, H.A. has failed to show a reasonable probability that, had the excluded evidence been allowed, the outcome of the trial would have been materially affected. *See Barry*, 183 Wn.2d at 317-18. Accordingly, the trial court's error in excluding the evidence was harmless.

## C.     RIGHT TO PRESENT A DEFENSE

H.A. argues that the trial court's exclusion of evidence about N.B.'s photos and video violated her right to present a defense. We disagree.

Criminal defendants have a constitutional right to present a defense. U.S. CONST. amends. V, VI, XIV; WASH. CONST. art. I, §§ 3, 22; *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). However, this right is not absolute. *Arndt*, 194 Wn.2d at 812. The Constitution permits judges to "'exclude evidence that is repetitive . . . , only marginally relevant

or poses an undue risk of harassment, prejudice, [or] confusion of the issues.'" *Jennings*, 199 Wn.2d at 63 (quoting *Holmes v. South Carolina*, 547 U.S. 319, 326-27, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006)) (internal quotation marks omitted). We must weigh the State's interest in excluding the evidence against the defendant's right to produce relevant evidence. *Id.*; *State v. Hudlow*, 99 Wn.2d 1, 16, 659 P.2d 514 (1983).

The more essential a witness is to the prosecution's case, the more latitude the defense should be given to explore the witness's motive, bias, and credibility. *State v. Orn*, 197 Wn.2d 343, 354, 482 P.3d 913 (2021). In *Orn*, there was only one testifying eyewitness to the crime. *Id.* This witness was a confidential informant who worked with the police to avoid being charged himself. *Id.* at 355. The defense was not allowed to ask any questions about the witness's work for the police that would show the witness's bias or status as a confidential informant. *Id.* Because the State did not show that the questions would have been unfairly prejudicial, our Supreme Court held that the defendant's Sixth Amendment rights had been violated by the exclusion of the questions. *Id.* at 355, 358.

Here, unlike in *Orn*, there were three testifying eyewitnesses (H.A., N.B., and I.A.), and the juvenile court found the third-party eyewitness (I.A.) to be most credible. There is no evidence that I.A. was biased. While the excluded questions in *Orn* would have revealed the only eyewitness's motivation to testify in favor of the police and the State, the evidence here would only have revealed N.B.'s motivation to lie to her parents, not to I.A., to police, or on the witness stand. Also unlike in *Orn*, the defense here was allowed to ask several other questions that showed N.B.'s motive to lie to her parents. The juvenile court only excluded evidence relating to N.B.'s nude photos and sexual video. Thus, while the juvenile court excluded evidence relating

specifically to the photos and video, the juvenile court allowed evidence that showed N.B. knew information at the school eventually would come back to her parents and that N.B. knew she would get in trouble with her parents for having sexual contact with anyone.

The State articulated two compelling interests in excluding N.B.'s photos and video. Specifically, the State cited the purpose behind the rape shield statute, which is to prevent prejudice arising from promiscuity. The State also characterized the request to allow questioning about the photos and video as "asking to embarrass the victim." 1 VRP (Nov. 12, 2020) at 103. Given the nature of the photos and video, the photos and video were prejudicial because they did not involve or relate to H.A., and the sexual nature of the photos and video were highly embarrassing to N.B.

On the defense's side of the balancing test, H.A. was allowed to present evidence supporting her core defense—consent. H.A.'s defense was that N.B. consented to the sexual contact, and H.A. was allowed to testify that N.B. consented to the sexual contact. Also, while H.A. was not allowed to present evidence of the nude photos and sexual video, H.A. was allowed to present evidence that supported the argument that N.B. had motivation to lie to her parents about consenting to the sexual contact with H.A. N.B.'s mother testified that she did not approve of homosexuality and that N.B. knew that. N.B.'s mother also testified that N.B.'s school had previously notified her about prior incidents with N.B., and that N.B. was aware of that. Further, N.B. testified that she would get in trouble with her parents for engaging in sexual behavior. And in closing argument, H.A.'s counsel argued that N.B. alleged she was raped because N.B. knew her parents would not accept her having sexual contact with another girl.

H.A. sought to bolster her argument about N.B.'s motivation to lie about consent by asking about one particular incident in which N.B.'s past nude photos and sexual video resulted in rumors

at school and got N.B. in trouble with her parents. But that testimony would only serve as repetitive, cumulative evidence on the issue of N.B. having motivation to lie to her parents.

Here, in balancing the State's interest in excluding the evidence against H.A.'s right to produce relevant evidence, the State's interests are sufficient to justify the exclusion of evidence without violating H.A.'s constitutional right to present a defense. *See Jennings*, 199 Wn.2d at 63. Accordingly, the trial court did not violate H.A.'s constitutional right to present a defense by excluding evidence of N.B.'s photos and video.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Worswick, P.J.

Maxa, J.